930 So.2d 686 (2006)
UNITED STATES FIRE INSURANCE COMPANY, Appellant,
v.
HAYDEN BONDED STORAGE COMPANY, a Florida corporation, Appellee.
No. 4D05-4.
District Court of Appeal of Florida, Fourth District.
April 5, 2006.
Rehearing Denied June 29, 2006.
*687 Mitchell L. Shadowitz of Shadowitz Associates, P.A., Boca Raton, for appellant.
Heidi M. Roth of Heidi M. Roth, P.A., Coral Gables, for appellee.
SWEET, GARY L., Associate Judge.
The salient issue in this appeal is whether an insurer/indemnitor, which has no *688 duty to defend its insured, but is alleged to have breached its duty to indemnify, may be bound by a Coblentz[1] settlement agreement/consent judgment negotiated by its insured/indemnitee and the claimant. The court below found such a breach and bound the insurer. Because there is no basis to find such a breach, we reverse the trial court. In so doing, we do not reach the larger question of whether, in this context, the duty to indemnify is coterminous with the duty to defend.

Facts
The facts of this case are summarized as follows:

The Jacobs Litigation
The insured, Hayden Bonded Storage Company[2] (Hayden), operated a moving and storage business. On June 30, 1994, Hayden contracted with Gayle Jacobs (Jacobs), agreeing to pick up Jacobs' furniture and personal property, deliver some of the items to a new residence, and store the remainder at its warehouse. The form language of the storage documents provided Hayden's liability for any damage to the items arising out of transportation or storage was limited to $0.30 per pound, unless otherwise stated. Jacobs was afforded the option of purchasing additional valuation and, in two of the documents, $35,070 was handwritten in as the valuation. The bill of lading limited Hayden's liability for damage to the property to $0.30 per pound up to a maximum of $2,000.
On August 17, 1994, Jacobs filed a statement of claim with Hayden, claiming some of the items delivered to her home on June 30, 1994, were damaged; the statement of claim placed an actual cash value of $500,000 on the transported property and claimed damages of $15,000.
In 1995, Jacobs asked Hayden to deliver the remainder of the items from the storage warehouse. When the items arrived, Jacobs refused to accept them, insisting the property was damaged by water and mold. Thereafter, Jacobs ceased making the monthly storage payments. Subsequently, Hayden sent Jacobs a letter, indicating she was more than $11,000 in arrears and threatening to place a lien upon her property. Jacobs instituted a court action for injunctive relief to prevent the sale of the property. Hayden notified its insurer, United States Fire Insurance Company (USFIC), and requested a defense.
Hayden was insured under an inland marine policy issued by USFIC. The policy included a "Furniture Warehouse Policy" form and contained the following relevant provisions:
1. PROPERTY COVERED
This policy covers the legal liability of the insured as a common carrier, bailee (or warehouseman) under bills of lading, shipping receipts, or storage agreements, issued or accepted by the insured, with respect to shipment or storage of lawful goods . . . .
....
7. VALUATION
All property for which the insured's legal liability is insured hereunder is by agreement valued at the amount of invoice or if not under invoice then at cash market value on date and at place of shipment, except however, the liability of the company shall not exceed the value as shown in tariff documents, bills of lading or shipping receipts if any, nor *689 shall the company's liability in any event exceed what it would then cost to repair or replace the cargo lost or damaged with other of like kind and quality.
....
11. INDEMNIFICATION
It is the purpose of this insurance to indemnify the insured only to the amount which the insured shall become liable to pay and shall pay in respect of the property. In no event does this policy cover the liability of the insured for the payment of any fines, assessments, damages, attorney's fees, court costs, or any other penalties which the insured shall be required to pay as a result of the violation of any law or regulation relating to the delay in the payment, denial or settlement of any claim for loss.
12. ADMISSION OF LIABILITY
The insured shall not voluntarily admit any liability nor settle any claims nor incur any expenses without the specific authority of the company . . . . In event of legal action being brought against the insured in respect to alleged loss or damage which might constitute a claim under this policy, the insured shall give immediate notice to the company, and the company reserves the right at its sole option to defend such action in the name and on behalf of the insured and will pay all legal expenses incurred by the company in connection with any action it undertakes to defend, also any judgment against the insured subject, however, to all the valuations and limitations provided for in this policy.
USFIC indicated it would not provide a defense in the matter, citing the policy language which gave it the "sole option" to defend. Nonetheless, it tendered $35,070  the amount written into the storage contract and the customer protection plan documents as the value for Jacobs' property. Jacobs rejected the tender and filed suit against Hayden, claiming Hayden was grossly negligent in handling her property and, as a result, some property was damaged during the initial June 1994 delivery and the remainder sustained water and mildew damage during storage. Jacobs' complaint sought damages in excess of $500,000. In response, the insurer reiterated it was not obligated to provide a defense and was not denying coverage, as it had tendered what it contended was its limit of liability, $35,070.
Eventually, Hayden and Jacobs executed a settlement agreement. The settlement agreement provided in relevant part:
1. Defendant, HAYDEN BONDED STORAGE WAREHOUSE, INC., hereby agrees to a final judgment entered against it in favor of Plaintiff, GAYLE JACOBS, in the amount of Four Hundred Seventy-five Thousand Dollars ($475,000.00).
....
3. Plaintiff hereby agrees that the "Final Judgment" . . . shall not be . . . recorded in any official record book . . . . The Plaintiff ... further agrees to forever forgo and forbear and refrain payment by the Defendant, its heirs, representatives, successors and assigns, of that final judgment . . . and agrees not to execute or collect or attempt to collect against the Defendant. . . . If the Plaintiff... is unsuccessful in an attempt to collect said judgment from United States Fire Insurance Company, then the Defendant . . . shall be in no way obligated to pay said judgment.
....
8. It is specifically understood ... that. . . the obligation of the Defendant to *690 pay said judgment shall only be due to the extent that funds are recovered from United States Fire Insurance Company. . . .
9. In the event the Defendant fails to prevail in its action against United States Fire Insurance Company and fails upon appeal, then Defendant shall pay to the Plaintiff the sum of One Hundred Thousand Dollars ($100,000.00).. . . In addition, the Defendant agrees to pay over to the Plaintiff any sums determined to be due and owing under the policy issued by United States Fire Insurance Company, including the Thirty-five Thousand Seventy Dollars ($35,070.00) previously tendered . . . .
As a result of the settlement, a final consent judgment was entered in Jacobs' favor against Hayden.

The Declaratory Judgment Action
By the time of the settlement agreement's execution, Hayden had initiated this litigation, seeking a determination from the court that USFIC had both a duty to defend and a duty to indemnify beyond the $35,070. By the time of trial, all parties agreed the policy did not impose upon USFIC a duty to defend its insured. Thus, the only remaining issues were whether the breach of a duty to indemnify should be treated similar to a breach of a duty to defend for purposes of binding an insurer to a Coblentz settlement, and if so, whether USFIC breached its duty.

The Final Judgment
The trial court entered final judgment in favor of Hayden, finding USFIC breached its duty by refusing to indemnify Hayden for any amount beyond the $35,070. In reaching this conclusion, the court specifically found that, during the declaratory judgment proceedings, "USFIC conceded that its liability was not limited to $35,070.00 under the subject policy of insurance, and that it had a duty to indemnify HAYDEN for the amount of any judgment entered against it in the Jacobs v. Hayden litigation, up to the policy limit" and that USFIC had failed to convey this to its insured. The court also found that USFIC was bound by the settlement agreement/consent judgment between Hayden and Jacobs, ruling the agreement was the result of arm's length negotiations and was reasonable. The court directed USFIC to pay to Jacobs the $135,070 Hayden was obligated to pay her under the terms of the settlement agreement/consent judgment and the $57,994.02 in fees and costs Hayden incurred in defending itself in the suit filed by Jacobs.
USFIC timely sought rehearing, arguing that (1) the settlement agreement did not require Hayden to pay Jacobs $100,000 plus the $35,070, but, rather, the $100,000 was inclusive of the $35,070 previously tendered; (2) absent a duty to defend, it was improper to require the insurer to bear the cost of Hayden's fees and costs; and (3) there was inadequate evidence to support the $57,994.02. The court rejected the arguments raised in the motion for rehearing. This timely appeal followed.

Analysis
The settlement agreement/consent judgment material to this case was described in the case of Coblentz v. American Surety Co. of New York, 416 F.2d 1059, 1063 (5th Cir.1969), wherein the court held that an insurer which had "refused to handle" its insured's defense, thereby leaving its insured "to his own resources," was bound by the terms of a negotiated final consent judgment entered against its insured.
Such agreements are valid and binding in Florida. An insurer will be bound to a settlement agreement/consent judgment negotiated between its insured and a claimant where (1) the damages are *691 covered by the policy; (2) the insurer wrongfully refuses to defend; and (3) the settlement is reasonable and made in good faith. See Ahern v. Odyssey Re (London) Ltd., 788 So.2d 369, 372 (Fla. 4th DCA 2001).
This case is different for two distinct reasons. First, cases such as Ahern involve a policy containing a duty to defend. In this case, the policy is clear, and the parties have stipulated, that the insurer was under no duty to defend. Second, those cases clearly involve a breach of that duty. Because the insurer in this case adamantly asserts there was no breach of its duty to indemnify, we address that issue first, as a finding of no breach would be dispositive and render moot the more general question of whether a Coblentz agreement may be imposed on an insurer for breaching its duty to indemnify.
It is clear that an insurer's duty to defend is broader than its duty to indemnify. See Klaesen Bros., Inc. v. Harbor Ins. Co., 410 So.2d 611, 612-13 (Fla. 4th DCA 1982). In fact, an insurer's duty to defend rises to the level of a fiduciary duty, requiring an insurer "`to use [on behalf of its insured] the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business.'" Berges v. Infinity Ins. Co., 896 So.2d 665, 668 (Fla.2004) (quoting Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla. 1980)).
Because the duty to defend is so broad and so important to an insured, its existence is determined early on based on only the allegations of the complaint. If the complaint sets forth facts which bring the claim within policy coverage, the duty to defend arises. See Farrer v. United States Fid. & Guar. Co., 809 So.2d 85, 88 (Fla. 4th DCA 2002). By contrast, the duty to indemnify is narrower and is determined by the underlying facts adduced at trial or developed through discovery during the litigation. See Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc., 344 F.Supp.2d 1358, 1366 (M.D.Fla.2004).
Throughout the Jacobs litigation, USFIC steadfastly asserted that its liability was limited to the amount tendered, $35,070. At some point during discovery, a question arose as to when the $35,070 figure was inserted in the storage documents because Mrs. Jacobs contended it was not present when she signed them. USFIC then argued that even if the tendered amount was invalid, it had nonetheless discharged its duty by tendering an amount which exceeded the contractual default valuation of $0.30 per pound up to a maximum of $2,000. Its position was based upon paragraph 7 of the insurance contract and permanent language of the storage and contractual documents.[3]
Hayden raises numerous reasons why the tendered amount was insufficient and why USFIC's refusal to tender more clearly establishes a breach of its duty to indemnify.
First, Hayden relies on testimony adduced at trial and directly referenced in the lower court's final judgment, which it believed established a concession that the duty to indemnify was breached. The colloquy *692 between counsel and the USFIC representative went as follows:
Q: Okay. My question to you is what if it turns out that after a trial a jury determined that the $35,070 was not binding and, therefore, awarded a judgment against Hayden for substantially more than that amount? If that would have occurred is it your position that the insurance company would have paid the amount of that judgment?
A: Yes.
This testimony was given erroneous emphasis. Clearly, if the underlying claim had been fully litigated, and if a jury verdict had established liability in excess of $35,070, then the policy would clearly require indemnification in that amount. This conclusion, however, assumes a full trial and a jury verdict determining the contractual limitations of liability were either invalid or inapplicable.
Second, Hayden contends the complaint alleges gross negligence against it, thereby vitiating the limitations of liability. Although gross negligence may very well accomplish such a result, there is nothing "inherent in [the] settlement agreement," other than bare allegations, indicating the presence of gross negligence. See Travelers Indem. Co., 344 F.Supp.2d at 1366; Hatmaker v. Liberty Mut. Fire Ins. Co., 308 F.Supp.2d 1308, 1313 (M.D.Fla.2004). Allegations alone may establish a duty to defend, but they do not establish a duty to indemnify.
Third, Hayden argues the limitations of liability, as described in paragraph 7 of the policy, i.e., tariff documents, bills of lading or shipping receipts, pertain only to shipping documents, not storage documents. Close scrutiny of the bill of lading reveals it contains all the terms set forth in the storage contract, with the only difference being that the storage contract includes a paragraph addressing "minimum period for storage." The bill of lading also sets forth the monthly charge for storage. Obviously, the bill of lading addressed and governed both the transportation and storage of Jacobs' property. This argument does not nullify the limitations of liability.
Fourth, in a related argument, Hayden argues the warehouse receipt or storage agreement is not valid because it fails to include an item enumerated in Florida Statutes section 677.202, i.e., the location of the warehouse where the goods were to be stored. Assuming Hayden's argument to be factually correct, it does not produce the desired result. A missing term in a warehouse receipt does not invalidate or nullify the entire document. It merely subjects the warehouseman to any liability for damage caused by the omission of the term. In this case, the alleged omission bears no connection to the relevant damage and therefore has no affect on the limitation of liability.
Fifth, and finally, the limitation of liability may be avoided if there was credible evidence adduced at trial or "inherent in the settlement" that Jacobs was not given a full or fair opportunity to declare full value. Jacobs did not testify at trial, and there was no evidence to establish any hindrance to her ability to fully and fairly declare value. Absent any evidence that she was induced not to read the documents, or was prevented from exercising her right to declare value and choose alternative insurance amounts, she is bound to the documents signed. See Allied Van Lines, Inc. v. Bratton, 351 So.2d 344 (Fla. 1977).
The policy in this case clearly provided the insured property was to be valued in an amount that would not exceed "the value as shown in tariff documents, bills of *693 lading or shipping receipts if any." The warehouse receipt and storage contract indicated a declared value of $35,070. Although some question was raised as to the validity of that declaration of value, there has been asserted no supportable reason to invalidate the $0.30 per pound limitation with a ceiling of $2,000. Accordingly, there was no legal basis to impose liability on USFIC in excess of $35,070, and it clearly fulfilled its duty to indemnify by tendering such amount.
As there was no breach of duty, the final judgment and order correcting final judgment entered below are reversed. The case is remanded with instructions to enter judgment in favor of USFIC.
Reversed and Remanded.
WARNER and MAY, JJ., concur.
NOTES
[1] Coblentz v. Am. Sur. Co. of N.Y., 416 F.2d 1059 (5th Cir.1969).
[2] Throughout the record, the insured is alternatively referred to as Hayden Bonded Storage Warehouse, Inc.
[3] The bill of lading and warehouse receipt both state at paragraph 3(e):

Unless a greater valuation is stated herein, the depositor or owner declares that the value in case of loss or damage arising out of storage ... of the goods and the liability of the company for any cause for which it may be liable for each or any piece or package and the contents thereof does not exceed and is limited to 30¢ per lb. per article, or for the entire contents of the entire storage lot does not exceed and is limited to $2,000....