IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-4652

YAZAN KHATIB, VAQAR ALI,
YOUSSEF AL-SAGHIR, and
SUMANT LAMBA,

      Appellants,

v.

OLD DOMINION INSURANCE
COMPANY and MAJDI
ASHCHI, individually,

      Appellees.

_____/

Opinion filed December 5, 2014.

An appeal from the Circuit Court for Duval County.
Karen K. Cole, Judge.

Charles P. Pillans, III, and Patrick P. Coll of Bedell, Dittmar, DeVault, Pillans & Coxe, P.A., Jacksonville, for Appellants.

Hinda Klein and Elizabeth A. Izquierdo of Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow, & Schefer, P.A., Hollywood, for Appellees.

SHEPHERD, FRANK A., ASSOCIATE JUDGE,

      The issue in this case is whether Old Dominion Insurance Company has a duty to defend and indemnify four doctors who are defendants in a third-party

defamation claim, appended to a multi-faceted action for fraud, conversion, civil conspiracy, breach of contract, and other causes of action, being prosecuted by them against the president and founder of a medical practice they all once enjoyed together. It is not seriously questioned that the doctors are insureds under the policy and that the insuring clause of the insurance policy would afford coverage to the doctors. The dispositive question is whether coverage is precluded by a policy exclusion. The trial court so found, but we disagree. On de novo review, we conclude that Old Dominion has an obligation to afford a defense to the third-party doctor defendants on the defamation claim filed against them, but we demur on the issue of indemnity.

## A. BACKGROUND

This case stems from a dispute between Dr. Majdi Ashchi and the appellants, Drs. Yazan Khatib, Vaqar Ali, Youssef Al-Saghir, and Sumant Lamba. Dr. Ashchi was the president and founder of First Coast Cardiovascular Institute ("FCCI"), a professional service organization that treats heart and cardiovascular disease. Appellants are FCCI's other officers and directors. After wresting control of FCCI from Dr. Ashchi, appellants, acting through FCCI, sued Dr. Ashchi and others for fraud, negligently supplying false information, breach of contract, reformation, unjust enrichment, breach of fiduciary duty, and conspiracy. Dr.

2

Ashchi denied all allegations and upped the ante by joining his former colleagues in the action individually, through a third-party defamation complaint.

The third-party complaint alleges, *inter alia*, that appellants launched a systematic plan to take control of FCCI and oust Dr. Ashchi from power. The complaint further alleges that as part of the plan, Dr. Khatib made baseless allegations against Dr. Ashchi at an FCCI shareholders meeting and that each of the appellants published defamatory statements about Dr. Ashchi to third parties. The complaint also alleges appellants "knew or should have known" that the defamatory statements they made about Dr. Ashchi were false.

The insurance policy in this case is a commercial general liability insurance policy. FCCI is the named insured on the policy. The policy also insures FCCI's "'executive officers' and directors . . . but only with respect to their duties as officers and directors." The third-party doctor defendants are executive officers or directors of FCCI, and in some cases both. It is alleged that at a shareholders meeting, Dr. Khatib wrongfully accused Dr. Ashchi of stealing money from FCCI to pay for improvements to his home, intentionally overcharging FCCI millions of dollars in rent through his real estate affiliates, and engaging in other acts of embezzlement. It further is alleged that Dr. Khatib and each of the third-party defendants published the same or similar statements to FCCI staff members, referring physicians, and patients.

3

## B. ANALYSIS

We have little difficulty in concluding that at least some of these alleged wrongs were performed by the third-party defendant doctors "with respect to their duties as officers and directors." Some, if not all, of the wrongs alleged occurred while the third-party doctor defendants were either discharging their obligation at a shareholders meeting or executing other official duties.

We also find on de novo review that "Coverage B" of the policy insuring agreement affords the third-party defendant doctors coverage in this case, subject, of course, to the workings of any policy exclusion. This insuring clause provides:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result . . . .

   b. This insurance applies to:

   (1) "Personal injury" caused by an offense arising out of your business . . . .

"Personal injury" is defined in the policy to include "injury, other than 'bodily injury,' arising out of one or more of the following offenses: . . . (d) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." It matters not under the policy that the alleged defamation is uttered against another insured or occurs during the course of a family feud. Old Dominion easily could have excepted coverage for defamation among insureds if it so desired. It also is incontestable that the allegations of the third-party complaint—in fact of the entire lawsuit—"arise[] out of [the] business" conducted by the parties. We therefore turn to the exclusions from coverage.

Old Dominion argues that the employment-related practices exclusion found in one of the endorsements to the insurance policy excuses it from any coverage obligation in this case. This exclusion reads in pertinent part:

> **This insurance does not apply to:**
>
> "Personal injury" to:
>
> (1)  A person arising out of any
>
> (a)  Refusal to employ that person;
>
> (b)  Termination of that person's employment; or
>
> (c)  **Employment-related practices**, policies, acts or omissions, **such as** coercion, demotion, evaluation, reassignment, discipline, **defamation**, harassment, humiliation or discrimination directed at that person . . . .

5

(emphasis added).

The exclusion goes on to specify that it applies:

> (1)   Whether the insured may be liable as an employer or in any other capacity . . . .

This exclusion, by its terms, excludes from coverage any claim for damages for "'[p]ersonal injury' caused by an offense arising out of [an insured's] business" **where the "personal injury" also "aris[es] out of any . . . (c) [e]mployment-related practices . . . such as . . . defamation."** (emphasis added). The third-party defendant doctors argue that the emphasized language found in subsection (1)(c) of the employment-related practices exclusion is ambiguous as a matter of law because it negates the coverage afforded under Coverage B, subsection 1.b, which affords coverage for "'personal injury' caused by an offense "arising out of [the insured's] business." The third-party defendant doctors are correct on the law but wrong on the interpretive facts.

It is true that an insurance policy cannot, with impunity, grant a right in one paragraph, then retract the very same right in an exclusion. See Tire Kingdom, Inc. v. First S. Ins. Co., 573 So. 2d 885, 887 (Fla. 3d DCA 1990) (concluding that conflicting provisions create an ambiguity concerning the question of coverage). It also is true that ambiguities thus created are "construed against the insurer and in favor of coverage." See Acosta, Inc. v. Nat'l Union Fire Ins. Co., 39 So. 3d 565, 573 (Fla. 1st DCA 2010) (quoting Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.,

6

913 So. 2d 528, 532 (Fla. 2005)). Unfortunately for the third-party doctor defendants, however, a cursory consideration of the two clauses on which they place their reliance for this argument reveals the provisions do not conflict.

Contrary to the argument of the third-party doctor defendants, a defamatory utterance might easily "arise out of [a company's] business" while being not at all "employment related." Case law from around the country supports this conclusion. See HS Servs., Inc, v, Nationwide Mut. Ins. Co., 109 F.3d 642, 646-47 (9th Cir. 1997) (holding that for an act or omission to be "employment related," the relationship to employment must be direct and proximate); Golden Eagle Ins. Corp. v. Rocky Cola Cafe, Inc., 114 Cal. Rptr. 2d 16 (Ct. App. 2001) (adopting the narrow interpretation of "employment related" by Ninth Circuit in HS Servs.); Waffle House, Inc. v. Nationwide Mut. Ins. Co., 114 S.W. 3d 601, 610 (Tex. Ct. App. 2003) (finding that the context of defamatory statements was not clearly employment related where the statements arose out of a company's attempt to prevent employees from leaving and not out of a former employee's termination). This interpretation also is consistent with our canon of construction providing that when a drafter uses two different phrases in the same context when he might have used one, it is presumed the drafter meant two different things. See Universal Prop. & Cas. Ins. Co. v. Johnson, 114 So. 3d 1031, 1036 (Fla. 1st DCA 2013) ("A contract is not to be read so as to make one section superfluous, and so '[a]ll the

7

various provisions of a contract must be so construed . . . as to give effect to each.'" (quoting Univ. of Miami v. Frank, 920 So. 2d 81, 87 (Fla. 3d DCA 2009))).

However, our task is not yet at an end. It is further axiomatic in the law of insurance coverage in Florida that if a complaint alleges some facts within and some facts outside of coverage under an insurance policy, the insurer must nevertheless defend the entire suit. Grissom v. Commercial Union Ins. Co., 610 So. 2d 1299, 1307 (Fla. 1st DCA 1992) (citations omitted). In this regard, the third-party complaint contains the following "examples" of defamatory statements allegedly made about Dr. Ashchi by the third-party doctor defendants to their staff members, referring physicians, and patients:

   a.   Dr. Khatib told Dr. Imran Sheikh that Dr. Ashchi had embezzled from FCCI;

   b.   Dr. Khatib told Dr. Jessica Barbare that Dr. Ashchi was guilty of financial improprieties;

   c.   Dr. Khatib told Victoria Kozel that Dr. Ashchi was due to be prosecuted for his conduct at FCCI;

   d.   Dr. Khatib told Dr. Juzar Lokhandwala that Dr. Ashchi orders unnecessary procedures; and

   e.   Dr. Al-Saghir told Dr. David Grech that Dr. Ashchi was a thief.

There is no indication in the third-party complaint that these allegedly defamatory statements were "employment related" at all. It is quite possible, for example, that these utterances were made at a business-related conference or

8

business-related social event, therefore "arising out of [the insureds'] business" for insuring agreement purposes, while at the same time not being "employment related" in any of the narrow senses discussed above. Moreover, "[i]f the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend." Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So. 2d 810, 814 (Fla. 1st DCA 1985) (citing New Amsterdam Cas. Co. v. Knowles, 95 So. 2d 413 (Fla. 1957); 7C Appleman, Ins. Law & Practice, § 4683, p. 58 (Berdal Ed. 1979)). Our study of the third-party complaint in this case leaves us with sufficient doubt.

## C. CONCLUSION

For the reasons stated, we find that Old Dominion Insurance Company owes the third-party defendant doctors a duty of defense on the allegations of the third-party complaint. At the same time, we hold that the decision of the trial court exonerating Old Dominion Insurance Company from a duty to indemnify the third-party defendant doctors is premature. A liability insurer's duty to indemnify is narrower than the duty to defend. E.g., U.S. Fire Ins. Co. v. Hayden Bonded Storage Co., 930 So. 2d 686, 691 (Fla. 4th DCA 2006) (citation omitted). The duty to indemnify is thus often dependent upon further factual development through discovery or at trial. Id. We find that to be so in this case. Accordingly,

9

we reverse and remand for further proceedings on Dr. Ashchi's claim for indemnity.

Reversed and remanded with directions.

MAKAR and OSTERHAUS, JJ., CONCUR.