448 So.2d 589 (1984)
Colleen STEIL, Appellant,
v.
FLORIDA PHYSICIANS' INSURANCE RECIPROCAL, and A. Ronald Walker, M.D., Appellees.
Nos. 83-1082, 83-1083.
District Court of Appeal of Florida, Second District.
April 13, 1984.
*590 Lee S. Damsker of Maney & Damsker, Tampa, for appellant.
William C. Blake, Jr. and H. Dennis Rogers of Blake & Associates, Tampa, for appellee Florida Physicians' Ins. Reciprocal.
F. Ronald Fraley and Timon V. Sullivan, Trial Counsel, and Charles P. Schropp and Raymond T. Elligett, Jr., Appellate Counsel, of Shackleford, Farrior, Stallings & Evans, P.A., Tampa, for appellee A. Ronald Walker, M.D.
GRIMES, Acting Chief Judge.
In this complicated malpractice action, the injured plaintiff settled her claim against the defendant doctor by acquiring an assignment of his rights against his insurance carrier and then discharging him from liability. She now asserts her right to recover the settlement figure from the insurance carrier which had previously denied coverage to the doctor.
Appellant-plaintiff (Steil) sued Dr. A. Ronald Walker (Walker), a physician specializing in psychiatry, and Florida Physicians' Insurance Reciprocal (carrier). In her third amended complaint she alleged that she became Walker's patient and that he failed to properly diagnose and treat her condition. During the course of treatment, Walker pursued "a course of conduct in which he allowed a counter-transference of his personal feeling to plaintiff, contrary to accepted psychiatric standards." Steil claimed that such negligent course of conduct caused her extensive and permanent psychiatric injury and humiliation.
The complaint went on to recite that Steil filed a malpractice claim against Walker. It was further alleged that Walker's insurance carrier denied that the claim was covered under the policy and wrongfully refused to provide Walker with a defense. Ultimately, Steil and Walker entered into a written stipulation and agreement for settlement of all claims. Walker acknowledged that he was obligated to Steil for $35,000 in damages, and he also gave her a written assignment of all his rights and causes of action against the carrier as they related to Steil's claim except claims for attorney's fees. As part of the settlement, Steil released Walker from further liability and dismissed her claim for malpractice against him. Steil asserted that her claim against Walker was within the coverage of the policy and demanded damages from the carrier of $35,000.
In a second count of the complaint, Steil sought a declaratory interpretation of the settlement agreement with Walker. She also prayed that if the agreement were interpreted contrary to her view, the court should declare the agreement to be without consideration so that she could proceed against Walker. In count III she alleged what she described as a breach of Walker's agreement to pay her $35,000.
The court granted both defendants' motions to dismiss. When it appeared that Steil did not wish to amend her pleadings further, the court dismissed the third amended complaint with prejudice. Steil then filed separate appeals with respect to each defendant. She contends before this court that she has sufficiently stated a cause of action against both.
Walker's policy contains the customary "no action" clause which provides that no action can lie against the carrier until the insured's obligation to pay has been finally determined, either by judgment against him after actual trial or by written agreement entered into by the carrier. The carrier's position is that since neither of these *591 events has occurred Steil cannot maintain her suit.
Steil relies upon the general rule that if an insurer wrongfully refuses to defend, an insured is entitled to make a reasonable settlement without requiring the suit to be carried to judgment even though the policy purports to avoid liability for a settlement made without the insurer's consent. Phoenix Assurance Co. v. Hendry Corp., 267 So.2d 92 (Fla. 2d DCA 1972), cert. discharged, 277 So.2d 532 (Fla. 1973); Cunningham v. Austin Ford, Inc., 189 So.2d 661 (Fla. 3d DCA 1966), cert. dismissed, 198 So.2d 829 (Fla. 1967). The carrier responds, however, by pointing out that Walker has neither paid nor become obligated to pay any monies in satisfaction of Steil's claim. The carrier argues that since its policy obligations are predicated upon Walker's liability, it cannot be held responsible when Walker has been discharged from liability without making any payment.
There is no Florida case in point, although the Fifth Circuit Court of Appeals in Coblentz v. American Surety Co., 416 F.2d 1059 (5th Cir.1969), endeavored to apply Florida law to a rather similar factual situation. In that case the insured stipulated with the claimant for entry of a $50,000 judgment against him after the insurance carrier withdrew its defense. Despite the fact that it was later determined that coverage existed, the trial court directed a verdict for the insurer because the stipulated judgment provided that it could only be satisfied from the insured's liability policy. The court of appeals reversed and ruled that by virtue of the insurer having elected to leave the insured to his own defenses, it could not later complain about the form of the judgment. Since there was no evidence that the stipulated judgment was tainted by fraud or collusion, the court directed the entry of a judgment against the insurer for $50,000.
In addition to Coblentz, a slim majority of other jurisdictions permit an injured plaintiff to recover from the insurer despite the existence of a covenant between the plaintiff and the insured to seek relief only from the insurer. State Farm Mutual Automobile Insurance Co. v. Paynter, 122 Ariz. 198, 593 P.2d 948 (Ariz. Ct. App. 1979); Zander v. Casualty Insurance Co., 259 Cal. App.2d 793, 66 Cal. Rptr. 561 (1968); American Family Mutual Insurance Co. v. Kivela, Ind. App., 408 N.E.2d 805 (1980); Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982); Metcalf v. Hartford Accident & Indemnity Co., 176 Neb. 468, 126 N.W.2d 471 (1964); Griggs v. Bertram, 88 N.J. 347, 443 A.2d 163 (1982); contra Bendall v. White, 511 F. Supp. 793 (N.D.Ala. 1981); American Casualty Co. v. Griffith, 107 Ga. App. 224, 129 S.E.2d 549 (1963); Huffman v. Peerless Insurance Co., 17 N.C. App. 292, 193 S.E.2d 773, cert. denied, 283 N.C. 257, 195 S.E.2d 689 (1973); Stubblefield v. St. Paul Fire & Marine Insurance Co., 267 Or. 397, 517 P.2d 262 (1973). In each of these cases except Griffith, a consent judgment was actually entered against the insured, along with an agreement that the plaintiff would seek only to execute against the insured's liability policy. However, we do not view the failure of formally obtaining a consent judgment as a meaningful distinction because the courts seldom inquire into the bona fides of a consent judgment, and even the entry of a consent judgment fails to meet the requirements of the no action clause.
By refusing to defend Steil's claim, the carrier left Walker to his own devices to protect himself in the best way possible. If the refusal was improper, we do not believe that the carrier can now rely upon the "no action" clause to defeat a claim predicated upon the insured's settlement. Moreover, we hold that the carrier was not necessarily exonerated because Walker was able to obtain his own discharge from liability in the course of reaching an agreement with Steil. Clearly, the intent of Steil and Walker was not to release the carrier. Cf. Fidelity & Casualty Co. v. Cope, 444 So.2d 1041 (Fla. 2d DCA 1984), petition for review granted (Fla. Feb. 6, 1984) (No. 64,825) (holding that an injured party may release a tort-feasor without discharging his insurer from a suit for bad faith).
*592 A further question arises with respect to the insurance issues to be tried. Certainly, the propriety of the carrier's refusal to defend must be decided because this will control the right of the carrier to rely upon the "no action" clause. Presumably because the duty to defend is usually broader than the duty to indemnify, Florida Farm Bureau Mutual Insurance Co. v. Rice, 393 So.2d 552 (Fla. 1st DCA 1980), petition for review denied, 399 So.2d 1142 (Fla. 1981), Steil suggests that the sole issue would be whether the carrier breached its duty to provide a defense for Walker. However, the only effect of a wrongful refusal to defend would be to preclude the carrier from relying upon the "no action" clause. Up to this point, the question of coverage has never been decided. Therefore, as a condition precedent to any recovery against the carrier, Steil will have to prove that her claim against Walker was within the coverage of the policy. We note that in every case in which the plaintiff prevailed under what we have characterized as the majority rule, the issue of coverage was decided in his favor.
The real concern in this type of case is that the settlement between the claimant and the insured may not actually represent an arm's length determination of the worth of the plaintiff's claim. In a situation where the insured actually pays for the settlement of the claim against him or where the case is fully litigated at trial before the entry of a judgment, the amount of the settlement or judgment can be assumed to be realistic. Therefore, if the insurer is later determined to have wrongfully refused to defend and the claim is within the coverage, it will be obligated to pay the amount of the settlement or judgment, at least within its policy limits, in the absence of a showing of collusion or fraud. 1 R. Long, The Law of Liability Insurance § 5.14 (1983).
However, in the instant case or one involving a consent judgment with a covenant not to execute, the settlement figure is more suspect. The conduct of an insured can hardly be characterized as fraudulent simply because he stipulates to a large settlement figure in order to obtain his release from liability. He has little or nothing to lose because he will never be obligated to pay. As a consequence, the settlement of liability and damages may have very little relationship to the strength of the plaintiff's claim. Due to this problem, the ordinary standard of collusion or fraud is inappropriate. See Miller v. Shugart. Thus, we hold that in a case such as this, a settlement may not be enforced against the carrier if it is unreasonable in amount or tainted by bad faith. Moreover, because the circumstances surrounding the settlement will be better known to the party seeking to enforce it, he should assume the burden of initially going forward with the production of evidence sufficient to make a prima facie showing of reasonableness and lack of bad faith, even though the ultimate burden of proof will rest upon the carrier. As stated by the New Jersey Supreme Court in Griggs v. Bertram when it adopted a similar guideline:
This rule reasonably accommodates and compromises the competing interests of the parties and considerations of public policy. It will discourage collusive or overreaching impositions upon insurance carriers and, at the same time, will be conducive toward encouraging settlement and protecting an insured in its efforts amicably to resolve a claim against it after having been abandoned by its carrier.
88 N.J. at 368, 443 A.2d at 174.
The explicit wording of the settlement agreement and the assignment forecloses Steil from making any further claim against Walker. Since these documents have been vindicated by this opinion, Steil's claims against Walker were properly dismissed.
We affirm the order of dismissal in favor of Walker in case number 83-1082. We reverse the order of dismissal against the carrier in case number 83-1083 and remand for further proceedings.
CAMPBELL and LEHAN, JJ., concur.