ALTENBERND, Judge.
Hyatt Legal Services (“Hyatt”) appeals a final judgment awarding damages to Robert Ruppitz. We affirm.
This appeal follows two separate lawsuits. In the first lawsuit, Mr. Ruppitz sued Hyatt and one of its attorneys for malpractice. Hyatt refused to defend that *1135 attorney. Mr. Ruppitz obtained a consent judgment from the attorney. Then, in a second lawsuit, Mr. Ruppitz sought relief against Hyatt on an assignment of the attorney’s claim for breach of contract. A jury found that the consent judgment was reasonable under the circumstances and the trial court entered judgment against Hyatt for that amount.
I. THE FIRST LAWSUIT
Robert Ruppitz retained Hyatt to represent him in a dissolution proceeding. The attorney handling his case was Albert Marshall, Jr. The result in the trial court was unsatisfactory to Mr. Ruppitz, and he appealed to this court. Mr. Marshall did not timely file a brief, and the appeal was ultimately dismissed for failure. to prosecute. Mr. Marshall apparently did not explain these developments to Mr. Ruppitz, which created many problems for Mr. Rup-pitz. In 1988, Mr. Ruppitz sued Mr. Marshall and Hyatt Legal Services for malpractice.
In its written employment contract with Mr. Marshall, Hyatt had agreed that it would provide malpractice insurance for Mr. Marshall’s protection. The terms and conditions of that coverage were not described in the contract. After Mr. Marshall was employed, Hyatt cancelled a policy of malpractice insurance and informed Mr. Marshall that it would itself provide equivalent protection. The employment contract was not modified in writing, and this record contains no written agreement concerning malpractice claims prior to Mr. Ruppitz’s lawsuit.
Hyatt initially retained one attorney to represent both Hyatt and Mr. Marshall. That attorney sent Mr. Marshall a letter stating that Hyatt had agreed to indemnify him for “any liability to claims of professional negligence in this matter.” The letter indicated that Hyatt would not cover intentional wrongdoing, acts outside the scope of employment, or punitive damages. While we doubt that this letter to Mr. Marshall from his own attorney creates a written contract between Hyatt and Marshall for protection of malpractice claims, it at least suggests the oral understanding that existed between Hyatt and Mr. Marshall.
An amended complaint was subsequently filed alleging not only standard malpractice, but also intentional infliction of emotional distress by Mr. Marshall and misleading advertising by Hyatt. These allegations created a conflict between the two defendants. Hyatt notified Mr. Marshall that it would not cover this claim. Moreover, it declined to further defend him in the lawsuit even on the allegations of malpractice. It arranged for the defense attorneys to withdraw from his representation, and informed him that any counsel he obtained would be retained at his own expense.
Thereafter, Mr. Marshall negotiated with Mr. Ruppitz’s attorney and settled the lawsuit against him. He agreed that a judgment in the amount of $500,000 could be entered against him. Mr. Ruppitz agreed that be would not execute on this final judgment. Instead, Mr. Ruppitz agreed to take an assignment of Mr. Marshall’s claim against Hyatt for breach of the employment agreement.
Following this settlement, the case against Hyatt proceeded to trial. The jury found that Hyatt was negligent, that it had committed fraud and concealment, and that it had engaged in misleading advertising. The jury awarded compensatory damages of $50,000 for all of these claims, and punitive damages of $125,000. Judgment was entered on this verdict against Hyatt. From our record, it does not appear that Hyatt requested any set-off from this verdict for the earlier consent judgment against the codefendant. Hyatt has satisfied its judgment.[1]
II. THE SECOND LAWSUIT
In September 1991, Mr. Ruppitz filed a second lawsuit against Hyatt. That complaint alleges that Hyatt breached its *1136 agreement with Mr. Marshall concerning malpractice protection, that the breach resulted in the $500,000 consent judgment, and that Mr. Ruppitz was the assignee of Marshall’s rights against Hyatt. Hyatt maintained in the trial court and argues on appeal that this lawsuit is barred by the first judgment and that the consent judgment is unenforceable.
The trial court submitted this case to a jury with an interrogatory verdict form. The jury determined that Hyatt had agreed to “indemnify Albert B. Marshall, Jr. for any acts in the Third Amended Complaint,” and that the consent judgment was not the result of collusion or bad faith. It determined that the amount of $500,000 established in the consent judgment was reasonable under the circumstances, and finally determined that no portion of the consent judgment was “attributable to damages for intentional wrongdoing or acts outside the scope of employment.” The trial court entered judgment on this verdict for $500,000 plus interest.
III. RECOVERABLE DAMAGES FOR BREACH OF THE AGREEMENT
In affirming this judgment, we address two issues. First, Hyatt maintains that the consent judgment should not have the same effect against it that such a judgment would have against an insurance company. The consent judgment and accompanying assignment in this case are frequently referred to as a Coblentz agreement. Coblentz v. American Surety Co. of New York, 416 F.2d 1059 (5th Cir.1969). In Coblentz the court permitted this type of settlement under Florida law when an insurance company wrongfully withdrew from the defense of its insured.. This court approved a Coblentz settlement in Steil v. Florida Physicians’ Ins. Reciprocal, 448 So.2d 589 (Fla.2d DCA 1984). To protect against the obvious possible abuses of this settlement procedure, we held that the insured must prove that the settlement was reasonable and was not tainted by bad faith. The trial court submitted this case to the jury essentially under the law announced in Coblentz and Steil.
Hyatt has failed to convince this court that Steil should not apply under these unusual facts. We emphasize that we are not announcing a broad rule subjecting all businesses with self-insurance plans to Coblentz. In this case, there is no written employment agreement limiting the employer’s duty to defend its employees.[2] It seems clear, as a matter of law, that the allegations of malpractice in Mr. Ruppitz’s amended complaint in the first lawsuit would invoke the duty to defend under a typical policy of malpractice insurance. Hyatt simply has not convinced us that it had any lesser obligation to defend under its informal arrangement.
The rule announced in Coblentz is not a statutory regulation of insurance companies, but is a judicially created rule to cope with cases in which a party with a duty to defend another abandons that person’s defense. Hyatt chose to assume responsibilities similar to an insurer on a standard malpractice policy. It did so on an extremely informal basis. We see no reason to exempt Hyatt’s contract from the duty to defend. We conclude that Mr. Marshall was entitled to protect his interests vis-a-vis Hyatt in the same way that he could have protected them if Hyatt had continued the contract of insurance that provided coverage at the inception of Marshall’s employment.
Since we conclude that Ruppitz could bring an action against Hyatt under the theory described in Coblentz and Steil, it is clear that the second lawsuit is not barred by the first lawsuit. The first ac *1137 tion was a claim in tort by Mr. Ruppitz in his own right. The second is a claim in contract dependent upon Mr. Marshall’s contractual rights. The legal issues are quite distinct, although the evidence for the two claims does overlap. In many respects, these two trials are similar to a trial on a tort claim followed by an action against an insurance company for bad faith refusal to settle. See Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783 (Fla.1980).
Second, we address Hyatt’s claim that the consent judgment included a payment for which it could not be held responsible under the agreement providing protection for malpractice claims. There is ample evidence that the amount of the consent judgment is very generous. Even Mr. Ruppitz’s attorney admits that at least $100,000 of the settlement related to mental pain and suffering on the claim for intentional infliction of emotional distress.
Without detailing the evidence, we conclude that a jury could find that the amount of this consent judgment was within the outer range of a reasonable amount so long as the judgment included an award of intangible damages on the tort of outrage. The dispositive question is whether the agreement concerning malpractice protection excludes protection for this tortious conduct. Hyatt is again hampered in its argument by the lack of any written agreement. Even the after-the-fact letter to Mr. Marshall from his own attorney describes only an exclusion for “intentional wrongdoing or acts outside the scope of employment.” A jury could decide that the infliction of emotional distress arose out of Mr. Marshall’s conduct as an attorney in connection with his communications with Mr. Ruppitz as a client and was within the scope of employment. The jury instructions in this case explained that intentional infliction of emotional distress could be based on actions in deliberate disregard of a “high probability” that emotional distress would follow. We see no factual basis to rule that the jury was prohibited from finding that Hyatt was obligated to protect Mr. Marshall for such an intentional infliction claim. Likewise, we conclude that there is no public policy reason to prevent Hyatt from protecting Mr. Marshall on this claim.
Affirmed.
FRANK, C.J., and LEHAN, J., concur.

. Mr. Ruppitz has given Mr. Marshall a partial satisfaction of the consent judgment reflecting the $50,000 payment by Hyatt. We are not required in this appeal to determine whether that satisfaction will reduce the amount owed on the second judgment entered against Hyatt.

. There is a temptation to describe Hyatt’s agreement to provide malpractice protection as either a "self-insurance” plan or an “indemnity agreement." Because Hyatt had no documentary proof of the terms of its informal agreement after it cancelled the contractually required malpractice protection, it is difficult to characterize the agreement. Under standard rules of contract construction, any ambiguity in this oral arrangement must be construed in favor of Mr. Marshall. In light of the evidence, the trial court could regard the indemnity agreement as indemnity against liability including a duty to defend. See Classic Concepts, Inc. v. Poland, 570 So.2d 311 (Fla. 4th DCA 1990), review denied, 581 So.2d 163 (Fla.1991).