Ward WRANGEN and Elyse Wrangen, Plaintiffs,

v.

PENNSYLVANIA LUMBERMANS MUTUAL INSURANCE COMPANY, Defendant.

Case No. 07–61879–CIV.

United States District Court, S.D. Florida.

Nov. 24, 2008.

**1274**

Bambi Groff Blum, Daren Alan Stabinski, Stabinski & Funt, Miami, FL, for Plaintiffs.

Andrew Edward Grigsby, Jr., Ronald Lee Kammer, Hinshaw & Culbertson LLP, Miami, FL, for Defendant.

## ORDER

ROBIN S. ROSENBAUM, United States Magistrate Judge.

This matter is before the Court on Plaintiffs' Motion for Protective Order [D.E. 29]. Following an expedited briefing scheduling, the Court held a hearing on November 20, 2008. [D.E. 35]. Both parties appeared and presented argument. After consideration of the Plaintiffs Motion, all responsive filings and briefs, the parties' arguments at the November 20th hearing, and the Court file, the Court denied Plaintiffs' Motion. This Order memorializes the Court's oral ruling at the November 20, 2008, hearing.

### I. Background

Plaintiff Ward Wrangen originally sued Omicron Supplies, Inc. ("Omicron"), alleging he had suffered injuries from inhaling fumes from glue while performing work at Omicron. [D.E. 1, ¶ 8]. Omicron had an insurance policy through Defendant Pennsylvania Lumbermens Mutual Insurance Company[1] at the time, and Omicron filed a claim, alleging protection pursuant to that insurance policy. *Id.*, ¶ 8, 13; *see also* D.E. 3, ¶ 2. Defendants, however, denied the claim. *Id.*, ¶ 8; D.E. 3 at ¶ 2, 26.

Consequently, Plaintiff Ward Wrangen and his wife Elyse Wrangen filed suit against Omicron for negligence in Broward Circuit Court. [D.E. 1, ¶ 8]. According to Plaintiffs, Omicron forwarded the lawsuit to Defendant, requesting defense of the claims made, pursuant to Omicron's insurance policy. *Id.*, ¶ 8–9. Defendants again denied coverage and allegedly declined to

---

**1.** The name of the company was not spelled correctly when Plaintiffs filed suit.

defend Omicron in the state lawsuit. *Id.*, ¶ 9, 28.

Subsequently, Plaintiffs and Omicron settled the state lawsuit for total of $4.5 million. [D.E. 1, ¶ 9, 29–35]. Following the settlement, Omicron executed an assignment to Plaintiffs of all claims and causes of action it had against Defendant, arising out of, or on account of, or connected to the injuries sustained by Plaintiff Ward Wrangen. *Id.*, ¶ 9, 36. The state court then entered a consent judgment in the amount of $4.5 million against Omicron. *Id.*, ¶ 9, 28.

On November 27, 2007, Plaintiffs filed suit against Defendant in the Circuit Court of the 17th Judicial Circuit, in and for Broward County. [D.E. 1, ¶ 7]. In this case, Plaintiffs, asserting the rights of Omicron, alleged breach of contract, based on Defendant's denial of coverage and alleged refusal to pay the full amount of the claim against Omicron. *Id.*, ¶ 9. Additionally, Plaintiffs sought a declaratory judgement essentially finding that Omicron was entitled to coverage for Plaintiffs' claim under the insurance policy it had with Defendants. *Id.*, ¶ 10–12. Defendants removed the case from state court to this Court on December 21, 2007. *Id.*

On November 4, 2008, Plaintiffs filed a Motion for Protective Order from (a) the Notice of Taking Deposition Duces Tecum of the Corporate Representative of Superior Adhesives, Inc., the manufacturer of the substance that Plaintiff, Mr. Wrangen, was allegedly exposed to and which allegedly caused his injuries at issue in this case, and (b) the discovery of all information regarding liability and causation in the underlying case. [D.E. 29]. In the Notice of Deposition for the deposition that is scheduled for November 24, 2008, Defendant requested that Superior Adhesives, Inc., produce the individual with the most

knowledge to testify to the matters concerning the following:

1) the MSDS for the material which is attached as Exh. A; 2) the chemical composition of the material identified in Exh. A; 3) appropriate and safe handling and usage procedures for the material identified in Exh. A; 4) precautions and warnings given by Superior Adhesives, or known of by Superior Adhesives regarding the material identified in Exh. A; 5) appropriate cleanup procedures and warnings regarding the material identified in Exh. A; and 6) information concerning dosage and/or methods or means of exposure to the material and known or suspected health effects, regarding the material identified in Exh. A.

*Id.*, Ex. F. "Exhibit A" of the Notice of Deposition is entitled, "Material Safety Data Sheet," for "OMICRON Transparent Flowing." *Id.*, Ex. F (pp. 88–93). The Notice of Deposition also includes an "Exhibit B," which requests specific documents related to the subject matter of the deposition. *Id.*, Ex. F (p. 94).

As set forth in their Motion, Plaintiffs argue that all information related to causation and liability have already been determined and conceded by way of the settlement agreement/consent agreement entered into in the underlying case, and that Defendant is estopped from raising these defenses in the current case. *Id.*, ¶ 9; p. 5. Plaintiffs assert that under Florida case law, in enforcing a consent agreement against the insurer such as Defendant in the case at hand, the only issues to be determined are whether the insured was covered under the policy in place, whether a wrongful refusal to defend occurred, and whether the settlement agreement was reasonable. *Id.*, p. 5. As a result, the topics set forth in Defendant's Notice of Deposition, as well

as any other discovery regarding the same issues of causation and liability, are irrelevant and immaterial to the current case, and it would be unduly burdensome, time consuming, and unnecessarily expensive to extend discovery in these areas. *Id.*, ¶ 11–14.

The Court originally set this hearing for December 3, 2008. [D.E. 33]. However, on November 14, 2008, Plaintiffs filed a Motion to Stay and/Or Shorten the Time to Respond to Plaintiffs' Motion for Protective Order, requesting that the Court stay the November 24, 2008, deposition at issue in their Motion for Protective Order [*see* D.E. 29], until after the previously scheduled December 3, 2008, hearing date on their Motion for Protective Order [*see* D.E. 33], or alternatively, that the Court expedite the responsive briefings and hearing on their Motion for Protective Order some time prior to the November 24, 2008, deposition date. [D.E. 34]. The Court granted in part Plaintiffs' request and expedited briefing on Plaintiffs' Motion and rescheduled the hearing for November 20, 2008. [D.E. 35].

Defendant filed its expedited Response on November 18, 2008. [D.E. 36]. Defendant acknowledged the established rule that in enforcing a consent judgment in this type of case, Plaintiff must make *prima facie* showing of reasonableness of the settlement agreement and a showing of lack of bad faith, but the ultimate burden of proof lies with Defendant. *Id.*, p. 3–4. In order to evaluate the reasonableness of the settlement, Defendant suggests that under Florida case law, the standard is that of a "reasonable person," and the fact finder must determine whether Defendant "knew or should have known through reasonable diligence and inquiry in ascertaining the probability of liability in the underlying case including whether or not the [P]laintiff[s] could prevail on the issue of

causation, as well as the reasonable damages that could be expected to be returned by a jury assuming an award of any damages to the [P]laintiff[s] could be established as caused by the negligence of the [D]efendant." *Id.*, p. 3; pp. 3–5. Based on this standard, Defendant claims that information regarding liability and causation of the underlying case are relevant to the issue of a reasonable settlement. *Id.*; pp. 6–7.

Furthermore, Defendant argues that information regarding causation is relevant to the issue of "good faith." *Id.*, pp. 5–6. In its Response, Defendant opines that discovery of information relating to causation may lead also to evidence showing there is no causal connection between the alleged chemical exposure and Plaintiff Ward Wrangen's injuries, or that Omicron made a material misrepresentation to Defendant in its insurance application regarding the chemical that allegedly injured Plaintiff Ward Wrangen, supporting the possibility that the settlement was made in bad faith. *Id.*

Defendant further states that its purpose for the deposition at issue is to explore Omicron's liability and causation in the underlying case as it relates to the issue of the reasonableness of the settlement agreement and good faith, and not to re-litigate the underlying facts of the case. Thus, as information regarding liability and causation are allegedly relevant to both the reasonableness of the settlement and good faith, which are at issue in this case, Defendant concludes that under the broad scope of discovery, the deposition and discovery should be allowed. *Id.*, pp. 6–11. Accordingly, Defendant requests that Plaintiffs' Motion be denied, that the deposition at issue proceed as noticed, that all discovery on issues of liability and causation be allowed, and that any issues of admissibility of deposition testimony be

addressed in motions *in limine* at the time of trial. *Id.*, p. 11. Plaintiffs then filed their expedited Reply on November 18, 2008. [D.E. 37].

Both parties appeared for the November 20, 2008, hearing and presented argument. During the hearing, Plaintiffs argued that the scope of Defendant's proposed deposition was outside the confines of what Florida case law allows in this type of case and is not relevant to any issues before the Court. While Plaintiffs agreed that the reasonableness of the settlement agreement and good faith are elements that need to be proven, under Plaintiffs' interpretation of Florida case law, the reasonableness of the settlement relates solely to the issue of the reasonableness of the settlement amount for the injuries sustained, in comparison to similar cases, and does not allow exploration of liability and causation of the underlying case. Plaintiffs contended that issues of liability and causation were settled in the underlying case and should not be re-explored in enforcement of the consent judgment in the current case. According to Plaintiffs, any exploration of the issues of liability and causation in discovery in this case undermined the principle of *res judicata.*

Alternatively, Plaintiffs submitted that the inquiry into the reasonableness of the settlement is really part of the issue of bad faith and the possibility of collusion between Plaintiffs and Omicron in entering into the settlement agreement, not whether the settlement amount was the fairest settlement, and, thus, liability and causation are not relevant. As such, according to Plaintiffs, the scope of Defendant's proposed deposition and any further discovery is not relevant to the issues of reasonableness or good or bad faith.

Defendants countered that Plaintiffs misinterpreted Florida case law, and that an inquiry into the underlying facts regarding liability and causation is contemplated by Florida case law as it relates specifically to the requirement of establishing the reasonableness of the settlement agreement and good faith. According to Defendant, in contrast to Plaintiffs' argument, the reasonableness of a settlement agreement under Florida case law is not limited to only the reasonableness of the settlement amount in light of the injuries sustained. Rather, Defendant argued, the case law establishes that an inquiry into causation and liability are necessary in order to assess issues of the reasonableness of the settlement agreement and good faith, thus, making them relevant and within the scope of discovery.

## II. Analysis

■ Rule 26(c), Fed.R.Civ.P., pursuant to which Plaintiffs seek relief, provides, in relevant part, as follows:

> Upon motion by a party or by the person from whom discovery is sought, ... and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....

As the party seeking a protective order, Plaintiffs must provide the Court with "good cause" for the protection sought. Fed.R.Civ.P. 26(c). "Good cause" has been defined as a "sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir.1987). The party requesting a protective order must make a specific demonstration of facts in support of the request. A court must then balance the competing factors involved in determining whether good cause has been shown. *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985).

Plaintiffs' claimed "good cause" for a protective order consists of its contention that the information sought in the specific Notice of Deposition, as well as the request for documents, and other similar discovery on issues of liability and causation, is not relevant to the matters before the Court in this proceeding. As to the issue of relevancy of information in discovery, Rule 26(b) of the Federal Rules of Civil Procedure defines the scope of discovery as including "any matter, not privileged, that is relevant to the claim or defense of any party" or, upon a showing of good cause, "any matter relevant to the subject matter involved...." Even after the 2000 amendments to Rule 26, it is well established that courts must employ a liberal discovery standard in keeping with the spirit and purpose of the discovery rules. *Graham v. Casey's Gen. Stores,* 206 F.R.D. 251, 253 (S.D.Ind.2002); *White v. Kenneth Warren & Son, Ltd.,* 203 F.R.D. 364, 366 (N.D.Ill.2001). Accordingly, discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the claims and defenses of the parties or otherwise on the subject matter of the action. *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.,* No. 01–0392–Civ–Gold, 2001 WL 34079319 *2 (S.D.Fla. Nov. 1, 2001) (Simonton, Mag. J.). Put more simply, a matter is deemed to be irrelevant if it does not pertain to a claim or defense.

In order to understand the scope of what issues are relevant to this case, the Court looks to Florida case law on the type of settlement agreement entered in this case. In Florida courts, this type of settlement agreement is sometimes referred to as a *Coblentz* agreement, as described in the case *Coblentz v. American Surety Co. of New York,* 416 F.2d 1059, 1063 (5th

Cir.1969),[2] wherein the court held that an insurer who had "refused to handle" its insured's defense, thus leaving its insured to "his own resources," was bound by the terms of a negotiated final consent judgment entered against the insured. *Id.* *Coblentz* agreements are valid and binding in Florida. *United States Fire Ins. Co. v. Hayden Bonded Storage Co.,* 930 So.2d 686, 690–91 (Fla. 4th D.C.A. 2006). As a result, an insurer will be bound to a settlement agreement/consent judgment negotiated between an insured and a claimant where (1) damages are covered by the policy; (2) the insurer wrongfully refused to defend; and (3) the settlement is reasonable and made in good faith. *Chomat v. Northern Ins. Co. of New York,* 919 So.2d 535, 538 (Fla. 3rd D.C.A. 2006); *see United States Fire Ins. Co.,* 930 So.2d at 690–91; *Gallagher v. Dupont,* 918 So.2d 342, 349 (Fla. 5th D.C.A. 2005).

In the case of when an insurer wrongfully refuses to defend its insured, "the insured's liability has been established by the settlement and the insurer may not later relitigate this issue." *Ahern,* 788 So.2d at 372; *see also* 788 So.2d at 373 (upon refusal to provide a defense "[insurer] Odyssey lost its chance to litigate factual issues surrounding duty, breach, and proximate causation that were pivotal to the ultimate resolution of Ahern's claims."). An insurer is not entitled to raise any defense to the plaintiff's claim in the pending case that should have been raised in the underlying action. *Gallagher,* 918 So.2d at 347; *Independent Fire Ins. Co. v. Paulekas,* 633 So.2d 1111, 1114 (Fla. 3rd D.C.A. 1994).

Nonetheless, where an injured party wishes to recover under a *Coblentz* agreement, "[t]he claimant must 'assume

---

**2.** Pursuant to *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

the burden of initially going forward with the production of evidence sufficient to make a *prima facie* showing of reasonableness and lack of bad faith, even though the ultimate burden of proof will rest with the carrier.'" *Chomat*, 919 So.2d at 538 (quoting *Steil v. Florida Physicians' Ins. Reciprocal*, 448 So.2d 589, 592 (Fla. 2nd D.C.A. 1984)). The courts impose good faith and reasonableness requirements in these cases due to the risk that the "settlement of liability and damages" in a settlement agreement "may have little relationship to the strength of a plaintiff's claim" where the insured may never be obligated to pay and has little to lose if he stipulates to a large sum with the plaintiff. *Steil*, 448 So.2d at 592.

■ Accordingly, in Florida courts the "test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant [the insurer] would have settled for on the merits of plaintiff's claim." *Home Ins. Co. v. Advance Machine Co.*, 443 So.2d 165, 168 (Fla. 1st D.C.A. 1983) (citing *Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn.1982)). In determining whether a settlement is reasonable, a Florida court considers not only such objective factors as the extent of plaintiff's injuries, but also "certain subjective factors ... including the degree of certainty of the tortfeasor's subjection to liability, the risks of going to trial and the chances that the jury verdict might exceed the settlement offer." *Home Ins. Co.*, 443 So.2d at 168 (citing *Miller*, 316 N.W.2d at 735). Furthermore,

> The determination of whether a settlement is reasonable is made by a "reasonable person" standard. . . .[P]roof of reasonableness is ordinarily established through use of expert witnesses to testify about such matters as the *extent of the defendant's liability*, the reasonableness of the damages amount in comparison with compensatory awards in other cases, and the expense which have been required for the settling defendants to settle the suit.

*Chomat v. Northern Ins. Co. of New York*, 919 So.2d at 538 (emphasis added). A determination of reasonableness of the settlement agreement is made "in view of the *degree of probability of the insured's success* and the size of the possible recovery." *Paulekas*, 633 So.2d at 1114 (emphasis added). Moreover, in defending against plaintiff's *prima facie* case of good faith, a defendant's "bad faith claim [can] include[ ] a false claim ..., or collusion in which the plaintiffs agree to share the recovery with the insured .... [and] these matters involve the *underlying facts* of the case." *Id.* (emphasis added).

■ In light of this Florida case law, as noted at the hearing on November 20, 2008, the Court found that the information sought at this noticed deposition, as well as documents sought by Defendants, is relevant to the issues of reasonableness of the settlement agreement and good faith, and therefore, is discoverable. Plaintiffs' contention that the inquiry into the reasonableness of the settlement agreement is limited to the actual value of the Plaintiffs' injury, as opposed to issues of liability and causation, is not supported by the case law. While reasonableness of the actual amount of settlement may certainly constitute a consideration in determining the reasonableness of a settlement agreement, as noted above, Florida case law defines the inquiry into "reasonableness" as not limited to just the actual amount of the settlement but more broadly includes "the extent of the defendant's liability," *Chomat*, 919 So.2d at 538, "the degree of certainty of the tortfeasor's subjection to liability, the risks of going to trial, and the chances that the jury verdict might exceed the settlement offer," *Home Ins. Co.*, 443

So.2d at 168, as well as "the probability of the insured's success and the size of the possible recovery," *Paulekas*, 633 So.2d at 1114.

It is difficult to conceive of how a defendant could find evidence regarding these issues without at least inquiring into the underlying facts concerning causation and liability. Thus, the Court held that Defendant's desire to explore information regarding liability and causation of the underlying case is reasonable and supported by Florida case law. In this regard, as information regarding causation and liability has a direct bearing on the issue of reasonableness of a settlement agreement, an essential issue in the case before the Court, it is relevant and falls within the realm of discoverable information.

Plaintiffs' alternative argument, that the reasonableness of the settlement pertains only to the issue of bad faith and the possibility of collusion between Plaintiffs and Omicron in entering into the settlement agreement and not whether the settlement amount was the fairest settlement, also must fail under Florida case law. First, while there maybe overlapping elements of reasonableness and good faith, Florida courts are clear that "[i]n addition to making a prima facie showing of reasonableness, the plaintiffs must *also* make a prima facie showing of good faith." *Chomat*, 919 So.2d at 538 (emphasis added); *see also Ahern v. Odyssey Re (London Ltd.)*, 788 So.2d 369, 372 (Fla. 4th D.C.A. 2001) (noting that third element as "that the settlement was reasonable *and* made in good faith") (emphasis added); *Paulekas*, 633 So.2d at 1114 (same); *Steil*, 448 So.2d at 592 (same). Thus, the requirement that a plaintiff present a *prima facie* case of the reasonableness of the settlement agreement and good faith includes two separate inquiries requiring separate analysis. Second, as discussed above, the inquiry into "reasonableness" as set forth by Florida case law does, in fact, include an inquiry into liability and causation. Furthermore, previously discussed, Florida courts have found that the issue of good faith or defending against a bad faith claim, "involve[s] matters involving the underlying facts of the case." *Chomat*, 919 So.2d at 538; *see also Steil*, 448 So.2d at 592. As such, the Court found that information regarding liability and causation also had a bearing on the essential element of good faith, and thus, served as another basis for relevancy of this information under the discovery rules.

Based on the foregoing, at the November 20th hearing, the Court denied Plaintiffs' Motion for Protective Order, found that Defendant may proceed with the scheduled November 24th deposition of the corporate representative of Superior Adhesives, Inc., and that discovery may proceed on information regarding liability and causation.

The Court reminds the parties that its ruling that Defendant may engage in discovery regarding these issues is not tantamount to a determination that all such evidence is admissible at trial. Questions of admissibility can differ from those of discoverability. All the Court rules at this time, then, is that the requested discovery falls within the scope of Rule 26, and thus, is permissible.

### III. Conclusion

Accordingly, it is hereby **ORDERED and ADJUDGED** that Plaintiffs' Motion for Protective Order [D.E. 29] is **DENIED.**