ROTHENBERG, J.
Third-party plaintiffs, Real Estate Investment Group, LLC, and Terranova Investments of Miami, Inc. (collectively, “the insureds”), appeal from a non-final order granting summary judgment of coverage forfeiture in favor of third-party defendant Attorneys’ Title Insurance Fund, Inc. (“the *869 insurer”). We have jurisdiction. Fla. R.App. P. 9.110(m). Because we conclude that there exist disputed issues of material fact, we reverse.
In 2002, the insureds purchased a development property in Miami-Dade County. The insurer provided the insureds with title commitments and two title insurance policies ($58,000 and $550,000). The title commitments, however, made no mention of a duly recorded easement allowing the South Florida Water Management District (“SFWMD”) access to a canal on the property.
The County approved the insureds’ plans for subdividing the property into thirteen separate lots. The insureds began construction, and because they were unaware of SFWMD’s easement, they built a house upon the easement. In December 2006, SFWMD issued a formal notice of violation, and the insureds ceased their building operations. The insureds retained private counsel, Anthony Recio (“Recio”), and on May 10, 2007, Recio submitted a claim to the insurer, referencing only the $58,000 policy. In response, the insurer requested certain documents, and the insureds sent the requested documents.
Thereafter, Recio commenced negotiations with the SFWMD in an attempt to secure a release of the easement. Based on these negotiations, SFWMD agreed to sell the easement to the insureds if the insureds agreed to pay for an appraisal of the area in dispute. By July 18, 2007, when the insurer had not yet granted or denied the insureds’ notice of claim, the insureds paid for the appraisal and continued to work with SFWMD to resolve the issue.
On October 17, 2007, the insurer notified the insureds that it was denying the claim asserting that the easement should have been obvious upon physical inspection, but stating, “if you wish to submit additional information for reconsideration of this decision, please do not hesitate to forward same.” Recio responded, disputing the insurer’s denial of coverage, notifying the insurer of its negotiations with SFWMD, and requesting the insurer to assist in the mitigation of its damages. The insurer failed to respond. Recio continued to negotiate with SFWMD which ultimately agreed to release the land to the insureds, which was valued at approximately $432,000, for $398,000. The insureds notified the insurer of SFWMD’s offer to resolve the easement violation.
In January 2008, the insurer retained attorney Ryan Bailine (“Bailine”), who became involved in discussions with SFWMD. Meanwhile, in February 2008, Recio submitted a second notice of claim to the insurer, including and referencing both policies. Over the next several months, Recio continued to communicate with the insurer, and warned the insurer that SFWMD’s offer to release the land would expire in sixty days and that the matter could turn adversarial. The insurer, however, failed to respond to SFWMD’s offer, and in January 2009, SFWMD sued the insureds for trespass and ejectment.
After being served with SFWMD’s complaint, the insureds filed a third-party complaint against the insurer seeking indemnity and declaratory relief based on the insurer’s failure to disclose or cure the defect in title. Apparently, this move finally got the insurer’s attention, because the insurer sent six letters to the insureds stating that the third-party complaint was premature, and that it would deprive the insurer of its contractual right to provide for the defense of the SFWMD action, and its right to the insureds’ cooperation.
Based on these communications, the trial court issued the instant order granting *870 summary judgment, concluding that the insureds had breached their contractual duty to cooperate and assist in the defense of the SFWMD action. The trial court reasoned that the insurer properly made six requests for cooperation and assistance which were improperly refused as the insureds continued to pursue their third-party complaint. This appeal followed.
Our review of the trial court’s order granting summary judgment is de novo. Bldg. Educ. Corp. v. Ocean Bank, 982 So.2d 37, 40 (Fla. 3d DCA 2008). Of critical importance here, the trial court found that “having initially denied the claim, the insurer reconsidered the denial and retained an attorney to negotiate with SFWMD on behalf of insured for a release from the easement.” In other words, the trial court found that: the insurer clearly reconsidered and reversed its no-coverage position; the insurer remained at all times in compliance with the terms of the policy; the insurer hired Bailine on behalf of the insureds; the insureds were made aware that Bailine was hired on their behalf; and the insureds consented to Bailine’s representation. For the reasons that follow, we reverse, holding that the trial court’s reliance on these findings was error, and that due to the existence of material issues of fact, the insurer was not entitled to summary judgment of coverage forfeiture as a matter of law. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130-31 (Fla.2000) (noting that the summary judgment standard is established where factual disputes do not exist).
If the facts underlying the above-mentioned findings were sufficiently developed, it would be difficult to quarrel with the trial court’s reasoning. Those findings, however, are supported by little more than the insurer’s arguments. The insurer argued before the trial court and on appeal, that it hired Bailine to represent the interests of the insureds, and that the act of bringing Bailine into the proceedings served to notify the insureds that the insurer had reconsidered and reversed its previous no-coverage position. However, a review of the record now before this Court reveals that the factual support for those arguments falls far short of the summary judgment standard.
While it is clear that on October 17, 2007, the insurer denied coverage in writing, and the insureds requested the insurer to reconsider its position, the record before this Court contains no written communication from the insurer to its insureds that it had changed its position and admitted to coverage under the policies. Additionally, there is a factual dispute as to whether Bailine was hired by the insurer to represent the insureds, and whether the insureds were aware, prior to the filing of their third-party complaint, that Bailine had been retained to represent them. To this end, we note that there is no record evidence of any communication by Bailine informing the insureds that he was representing their interests, or by the insurer that Bailine had been retained to represent them. There is no evidence that Bai-line ever updated the insureds (his ostensible clients) on the status of the case, his efforts, or of any results. In fact, the only communications before this Court involving Bailine were exchanged between Bai-line and representatives of the insurer, not the insureds.
The insureds argue that a reasonable interpretation of the record suggests that the insurer denied coverage without reversing its position until after the insureds filed their third-party complaint. The insureds maintain that they were unaware that Bailine was hired by the insurer to represent them (not the insurer). Furthermore, the insureds contend that the insurer retained Bailine for the insurer’s *871 own purposes and interests — which were in direct conflict with those of the insureds — thereby forcing the insureds to continue employing separate counsel. Thus, the insureds argue that this denial left the insureds free to pursue the third-party complaint, and excused them from any contractual duty to cooperate with the insurer, or to turn over the defense of the SFWMD action to the insurer. See First Am. Title Ins. Co. v. Nat’l Union Fire Ins. Co., 695 So.2d 475, 477 (Fla. 3d DCA 1997) (“Where, however, an insurer denies a claim and refuses to defend, the insured can take whatever steps are necessary to protect itself from a claim.”); Steil v. Fla. Physicians’ Ins. Reciprocal, 448 So.2d 589, 591 (Fla. 2d DCA 1984) (holding same and noting the general rule that where an insurer refuses to defend, its insured may obtain a reasonable settlement despite policy language to the contrary).
Because significant questions persist as to whether the insurer reconsidered or reversed its no-coverage position, and if so, whether the insurer notified the insureds of the change in its position prior to the insureds’ filing their third-party complaint against the insurer; whether Bailine was hired on behalf of the insureds; and whether the insureds were aware that Bai-line had been hired to represent their interests, the insurer has failed to demonstrate the non-existence of material issues of fact entitling the insurer to judgment as a matter of law. Accordingly, summary judgment was improvidently granted. We therefore reverse the order under review and remand for further proceedings consistent with this opinion.
Reversed and remanded.