[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12352
Non-Argument Calendar

_____

D.C. Docket No. 6:10-cv-00640-RBD-KRS

ANTONIO JAMES JIMENEZ,

Plaintiff-Appellant,

versus

GOVERNMENT EMPLOYEES INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 31, 2016)

Before WILSON, ROSENBAUM and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Antonio James Jimenez appeals from the district court's denial of his motion for judgment as a matter of law or, alternatively, for a new trial in this diversity action alleging breach of contract and bad faith against Defendant-Appellee Government Employee Insurance Company ("GEICO"). Jimenez sought below to enforce a so-called Coblentz agreement made between himself and the estate of Pablo Pinedo, a non-party who was killed in an automobile accident for which Jimenez was at fault, against GEICO.[1] After trial, the jury found that GEICO had acted in bad faith by failing to settle Pinedo's wrongful death claim against Jimenez but returned a negative response to the question of whether the Coblentz agreement was "reasonable in amount and not tainted by bad faith, fraud, or collusion or without any effort to minimize liability." Accordingly, the district court held that the Coblentz agreement was not enforceable and entered judgment in favor of GEICO. Jimenez filed a post-trial motion for judgment as a matter of law arguing that a reasonable jury would not have a legally sufficient evidentiary basis to find either that the Coblentz

---

[1] Coblentz agreements are named for the former Fifth Circuit case. See Coblentz v. Am. Sur. Co. of N.Y., 416 F.2d 1059 (5th Cir. 1969). In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. Coblentz agreements permit an insured party to "enter into a reasonable settlement agreement with the [injured party] and consent to an adverse judgment for the policy limits that is collectable only against the insurer." Garcia v. GEICO Gen. Ins. Co., 807 F.3d 1228, 1230 n.1 (11th Cir. 2015) (quoting Perera v. U.S. Fid. & Guar. Co., 35 So. 3d 893, 900 (Fla. 2010)). "[I]f a liability insurer is informed of an action against its insured[] but declines to defend the insured, the insurer may be held to a consent judgment entered in that action, absent fraud or collusion." Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1321 (11th Cir. 2014).

agreement was unreasonable in amount or the product of bad faith. The district court found that the verdict was supported by sufficient evidence and denied the motion. On appeal, Jimenez argues that the district court erred in denying his motion for judgment as a matter of law. For the reasons discussed below, we affirm.[2]

## I. Background

On March 4, 2006, Antonio James Jimenez caused a car accident killing two people. One of the deceased was Pablo Pinedo, a Central Florida resident who was survived by a minor child that lived with his birth mother in Uruguay. At the time of the accident, Jimenez was insured by GEICO under an automobile insurance policy that provided bodily injury coverage in the amount of $10,000 per person and $20,000 per occurrence. Although Jimenez later admitted fault for the car accident, he originally lied about the circumstances surrounding the accident, fled the scene of the accident, filed false police reports, and advised GEICO that his car had been stolen. Jimenez was later charged with eight criminal counts related to the accident and is currently serving a ten-year prison term for leaving the scene of an accident involving a death and failing to render aid.

---

[2] Because we conclude that there was sufficient evidence for a jury to find both that the settlement was not reasonable and that the settlement was not made in good faith, and therefore hold that the district court did not err in denying Jimenez's motion for judgment as a matter of law, we do not reach Jimenez's alternative argument that the district court abused its discretion in denying his motion for a new trial based upon the formulation of the jury charge.

When GEICO learned of Plaintiff's misrepresentations, it filed an action in the Ninth Judicial Circuit Court of Florida seeking a declaratory judgment that its automobile insurance policy did not provide coverage to Jimenez for the accident. While the declaratory judgment action was pending, GEICO declined an offer from Pinedo's estate ("the Estate") to settle a suit for the policy limit of $10,000. The Estate then filed a wrongful death suit against Jimenez. GEICO offered to defend Jimenez in the wrongful death suit under a reservation of rights, which Jimenez rejected. Jimenez then entered into a Coblentz agreement with the Estate.

The relevant terms of the Coblentz agreement at issue in this appeal are as follows. Jimenez stipulated to a judgment against himself and in favor of the Estate "in the amount of $1,000,000." Additionally, Jimenez assigned to the Estate "any and all claims, rights, benefits or chooses [sic] in action that Jimenez may have against GEICO," including "the full amount of the judgment in the case, plus any interest, cost or attorney's fees that may lawfully accrue thereon." The parties further stipulated that the Estate could "if it desires, prosecute the assigned claims in its own names" or, alternatively, could "require Jimenez to prosecute such assigned claims in his own name." In the event that the Estate requested the latter option, the agreement provided that "Jimenez shall be represented by counsel approved by the estate and their counsel, Mark A. Nation, Esquire, and Rick L. Martindale, Esquire." In return, and as consideration, the Estate agreed that it

4

would seek satisfaction of the judgment only from GEICO and would not execute or attempt to execute against Jimenez. Finally, the parties agreed that in the event that Jimenez was requested to prosecute the actions against GEICO, Jimenez's attorneys' contingent fees would be 25% of the gross recovery plus costs if resolved within six months after initiating litigation, 33 1/3% plus costs if resolved within the first year, and 40% plus costs if resolved after the first year following the initiation of litigation.

Thereafter, the Florida state court found that Jimenez did not make "material" misrepresentations regarding the accident and thus GEICO was not permitted to deny coverage.

On April 23, 2010, Jimenez filed a complaint in the instant action in the District Court for the Middle District of Florida alleging that GEICO had breached its contract and its duty of good faith by failing to settle the Pinedo claim up to the bodily injury liability limits under Jimenez's automobile liability insurance policy. The case proceeded to trial. On December 8, 2014, the jury was presented with the following two issues:

> 1. Do you find by a preponderance of the evidence that GOVERNMENT EMPLOYEES INSURANCE COMPANY acted in bad faith by failing to settle the Pablo Pinedo wrongful death claim against its insured, ANTONIO JAMES JIMENEZ?
>
> 2. Do you find that the consent judgment entered into by Antonio James Jimenez was reasonable in amount and

5

not tainted by bad faith, fraud, or collusion or without
any effort to minimize liability?

The jury returned a verdict answering YES to the first question and NO to the second question. Accordingly, the district court held that the Coblentz agreement was not enforceable and entered final judgment in favor of GEICO. On January 8, 2015, Jimenez filed the instant motion for judgment as a matter of law. The district court denied the motion on April 28, 2015. This appeal timely followed.

## II. Standard of Review

We review a district court's ruling on a motion for judgment as a matter of law *de novo*. Hubbard v. BankAtlantic Bancorp, Inc., 688 F.3d 713, 723 (11th Cir. 2012). In deciding a motion for judgment as a matter of law, we review all the evidence, drawing all reasonable inferences in favor of the nonmoving party. Id. at 724. Judgment as a matter of law is appropriate where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. Pro. 50(a).

## III. Discussion

Jimenez brings this suit against GEICO pursuant to a Coblentz agreement between himself and the Estate. To recover from GEICO the sums assigned to the Estate under the Coblentz agreement, Jimenez must prove that (1) GEICO wrongfully refused to defend Jimenez in the underlying state court action; (2)

6

GEICO had a duty under the insurance policy to indemnify Jimenez; and (3) that the settlement between Jimenez and Pinedo was reasonable and made in good faith. See Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1322 (11th Cir. 2014); see also Chomat v. N. Ins. Co. of N.Y., 919 So. 2d 535, 537 (Fla. 3d D.C.A. 2006). GEICO has not challenged the jury's finding that GEICO wrongfully refused to defend Jimenez in the underlying state court action. Nor has GEICO challenged the district court's finding that it had a duty under the insurance policy to indemnify Jimenez. Rather, the only question on appeal is whether there was sufficient evidence for a reasonable jury to conclude that the Coblentz agreement entered into by Jimenez and the Estate was not reasonable in amount and not made in good faith. We agree with the district court that there was ample evidence to support a jury finding on both prongs.

The dual good faith and reasonableness requirements are imposed out of the "real concern in this type of case" that "the settlement between the claimant and the insured may not actually represent an arm's length determination of the worth of the plaintiff's claim." Steil v. Fla. Physicians' Ins. Reciprocal, 448 So. 2d 589, 592 (Fla. 2d D.C.A. 1984). In a case like this one involving a consent judgment with a covenant not to execute, the insured "has little or nothing to lose because he will never be obligated to pay." Id. "As a consequence, the settlement of liability

7

and damages may have very little relation to the strength of the plaintiff's claim." Id.

Florida law provides that the "test as to whether the [Coblentz] settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant [the insurer] would have settled for on the merits of plaintiff's claim." Wrangen v. Pa. Lumbermans Mut. Ins. Co., 593 F. Supp. 2d 1273, 1279 (S.D. Fla. 2008) (citing Home Ins. Co. v. Advance Mach. Co., 443 So. 2d 165, 168 (Fla. 1st D.C.A. 1983)).  "In determining whether a settlement is reasonable, a Florida court considers not only such objective factors as the extent of plaintiff's injuries, but also 'certain subjective factors . . . including the degree of certainty of the tortfeasor's subjection to liability, the risks of going to trial and the chances that the jury verdict might exceed the settlement offer.'" Id. (citing Home Ins. Co., 443 So. 2d at 168). "[P]roof of reasonableness is ordinarily established through use of expert witnesses to testify about such matters as the extent of the defendant's liability." Id. (emphasis omitted) (quoting Chomat 919 So. 2d at 538). "A determination of reasonableness of the settlement agreement is made in view of the degree of probability of the insured's success and the size of the possible recovery.'" Id. (emphasis omitted) (quoting Indep. Fire Ins. Co. v. Paulekas, 633 So. 2d 1111, 1114 (Fla. 3d D.C.A. 1994)).

8

Florida law provides that bad faith "may be established by evidence of a false claim, or collusion in which the plaintiffs agree to share the recovery with the insured, or an absence of any effort to minimize liability." Bond Safeguard Ins. Co. v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa., No. 6:13-cv-561-Orl-37DAB, 2014 WL 5325728, at *9 (M.D. Fla. Oct. 20, 2014) (citing Chomat, 919 So. 2d at 538 and Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC, 534 F. App'x 926, 928 (11th Cir. 2013)). Courts have found bad faith where, for example, the amount of the settlement was not subject to good faith negotiations. See, e.g., id.; Culbreath Isles Prop. Owners Ass'n, Inc. v. Travelers Cas. & Sur. Co. of Am., No. 8:12–cv–2928–T–26EAJ , 2015 WL 9434387, at *7 (M.D. Fla. Oct. 22, 2015).

In the instant case, the undisputed evidence showed that no wrongful death lawsuit was ever served on Jimenez. No discovery was conducted before the parties entered into the Coblentz agreement. No depositions were taken. No interrogatories were sent. In determining that $1,000,000 was an appropriate settlement amount, the parties did not reference worklife tables to determine the worklife expectancy of the deceased. Nor could counsel for the Estate or Jimenez's expert witness answer basic questions about Pinedo's financial situation. Cunningham, counsel for the Estate, did not know how much Pinedo's tax return showed he was making at the time of his death, the amount of his rent, or the amount he spent on utilities, food, or entertainment. Nor did Cunningham know

9

how much money Pinedo was sending to Uruguay to support his child. De Armas, the attorney called by Jimenez to offer expert witness testimony on the reasonableness of the settlement, admitted that he also had not examined Pinedo's tax returns, his earnings, or his spending patterns. The parties did not hire a life planner or economist to project out net accumulations or expenses. For these efforts, the Coblentz agreement provided that counsel would be generously compensated in contingency fees and costs. The lawyers drafted the settlement and Jimenez, who was already serving time in prison, gave his agreement in exchange for the release from liability.

On this record, we cannot conclude that no reasonable jury could find that the Coblentz agreement was unreasonable and reached by collusion between Jimenez's and the Estate's counsel or by an absence of effort to minimize liability. Therefore, the judgment of the district court is affirmed.

**AFFIRMED.**

10