**CULBREATH ISLES PROPERTY OWNERS ASSOCIATION, INC., and Orline M. Sidman, as Plenary Guardian and on Behalf of Phyllis Ann Kirkwood, and Florida Policyholders, LLC, Plaintiffs,**

v.

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, Defendant.**

CASE NO: 8:12–cv–2928–T–26EAJ

United States District Court,
M.D. Florida,
Tampa Division.

Signed October 22, 2015

Mark Paul Buell, Raymond T. Elligett, Jr., Shirley Thompson Faircloth, Buell & Elligett, PA, Ronald Edward Bush, Hughes Hamilton Rice, III, Bush, Graziano, Rice & Platter, PA, George A. Vaka, Vaka Law Group, James J. Wimsatt, Tampa, FL, for Plaintiffs.

Andrew V. Tramont, Jr., Bradley B. Aserlind, Paulino A. Nuñez, Jr., Rodriguez, Tramont, Guerra & Nunez, PA, Coral Gables, FL, for Defendant.

## ORDER

RICHARD A. LAZZARA, UNITED STATES DISTRICT JUDGE

**THIS CAUSE** was remanded by the Eleventh Circuit Court of Appeals for further proceedings consistent with its single-issue ruling that the fee judgments in the underlying lawsuits against the homeowners qualified as "wrongful acts" and thus are covered under the subject Non-Profit Management and Organization Liability insurance policy ("the Policy") issued by Defendant Travelers Casualty and Surety Company of America ("Travelers") to Plaintiff Culbreath Isles Property Owners Association, Inc. ("Culbreath").[1] The case was reopened for further proceedings to resolve the remaining issues of Travelers' defenses to coverage and ultimately came before the Court for a nonjury trial from August 11, 2015, through August 14, 2015.[2]

Culbreath has now voluntarily dismissed its claims against Travelers regarding Richard and Nancy Lewis ("the Lewises"),[3] leaving only Plaintiffs Orline Sidman ("Sidman"), as personal representative of the estate of Phyllis Kirkwood, and Florida Policyholders, LLC's ("FP") claims against Travelers for resolution by this Court. The Court now has before it Sidman and FP's written closing arguments,[4] Travelers' Post–Trial Brief and appendices,[5] and the parties' respective reply briefs.[6] Plaintiffs also request additional oral argument[7] and Travelers opposes the request.[8] The Court finds that the remaining issues in this case can be resolved without the need for additional oral argument. The greater weight of the evidence before this Court clearly demonstrates that the settlement agreement entered into by Culbreath and Buell & Elligett, P.A. ("B & E"), for the sum of $295,000 in attorney's fees for 350 hours of work (billed at $842 per hour) was not reasonable in amount and not reached in good faith. The Court, therefore, determines that the Florida state court judgment entered pursuant to that settlement agreement will not be enforced against Travelers.

### Background Facts

On October 16, 2008, Culbreath sued property owners Phyllis Kirkwood ("Kirkwood") and the Lewises, in two separate actions in the Thirteenth Judicial Circuit Court in Hillsborough County, Florida, alleging that the condition of their respective properties violated the Culbreath Isles Homeowners' Association's bylaws. Culbreath sued these parties under section 720.305, Florida Statutes, which contains a "prevailing party" attorney's fee provision. Thus, Culbreath was aware that if it lost these cases it would have to pay the prevailing Defendants' fees.

Kirkwood was represented by the B & E law firm, whose principal, Mark Buell ("Buell"), agreed to perform work on the case for $300 per hour. In her answer to Culbreath's complaint, Kirkwood demanded the attorney's fees she would incur in defending the action if she prevailed and

---

1. *See* dockets 95 and 98 (reported at *Culbreath Isles Property Owners Ass'n, Inc. v. Travelers Cas. and Sur. Co. of America*, 601 Fed.Appx. 876 (11th Cir.2015)).

2. *See* orders entered at dockets 104, 107, and 122.

3. *See* dockets 176 and 177.

4. *See* docket 173.

5. *See* docket 172.

6. *See* dockets 178 and 179.

7. *See* docket 174.

8. *See* docket 175.

asserted a counterclaim against Culbreath for slander of title. At Culbreath's request, Travelers appointed Litchfield Cavo, LLP, to defend Culbreath against the counterclaim. The Lewises filed a Motion to Dismiss on December 12, 2008, in which they requested an award of fees should they prevail. Culbreath did not make a claim for coverage of its exposure for the fees the Lewises expected to incur in defense of Culbreath's lawsuit.

On June 11, 2010, the Florida state court granted final summary judgment in favor of Kirkwood and the Lewises on Culbreath's claims against them, and Culbreath appealed. On June 23, 2010, Kirkwood and the Lewises filed their respective motions to tax fees and costs, arguing that: (a) they were entitled to fees as prevailing parties under Chapter 720, Florida Statutes, and (b) Culbreath's cases against them were frivolous and thus they were entitled to fees under section 57.105, Florida Statutes. For the first time, on July 20, 2010, over a year and a half after the Lewises demanded fees in their first motion to dismiss Culbreath's suit, Culbreath notified Travelers that it was seeking coverage under the Policy for the Lewises' fees.

On August 11, 2010, Buell wrote to Culbreath's counsel that Kirkwood had incurred fees of $87,357.50 through July 20, 2010, and that she would seek "a multiplier of approximately 2 to 2.5 consistent with Florida law."[9] The next day, the state court entered an order granting Kirkwood and the Lewises' motions for attorney's fees and costs, reserving jurisdiction to determine the amounts to be awarded.[10]

On November 4, 2010, Kirkwood entered Tampa General Hospital.[11] Sidman, her lifelong friend, testified that Kirkwood underwent surgery several days later, suffered a stroke, and was rendered generally unable to communicate with people.[12] Buell likely knew Kirkwood was ill, but there is no evidence that he ever visited his client in the hospital. Sidman testified that, although she did not advise Buell of Kirkwood's hospitalization, she thought her husband had advised Buell that Kirkwood was "in the hospital, and this is what's happened[,]" after which Buell sent Kirkwood flowers.[13] Sidman also testified that after suffering the stroke in November, Kirkwood's condition did not improve.[14] On January 6, 2011, Sidman petitioned the Probate Division of the Thirteenth Judicial Circuit Court for appointment as Kirkwood's plenary guardian.[15] On February 17, 2011, the Probate Court entered an order determining Kirkwood was totally incapacitated.[16] The Court subsequently appointed Sidman as Kirkwood's plenary guardian[17] After Kirkwood passed away on December 24, 2012, leaving no heirs, the Probate Court appointed Sidman as the personal representative of Kirkwood's estate on March 21, 2013.[18]

On December 23, 2010, prior to any hearing on the amount of the award of attorney's fees, the issue of the amount of fees between Kirkwood and Culbreath was

9. *See* Plaintiffs' Trial Exhibit 65.

10. *See* Plaintiffs' Trial Exhibits 66 and 67.

11. *See* Trial Transcript, Vol. 3, pp. 114:16–18.

12. *See id.* at 132:1–4; 135:7–138:16.8.

13. *See id.* at 132:22–25–133:2.

14. *See id.* at 133:3–12.

15. *See* Defendant's Trial Exhibit 32.

16. *See* Defendant's Trial Exhibit 35.

17. *See* Defendant's Trial Exhibit 34.

18. *See* Plaintiffs' Trial Exhibit 135.

resolved when Buell signed a "Joint Stipulation and Agreement" ("the Stipulation") with Culbreath on Kirkwood's behalf, purportedly with her knowledge and consent.[19] Pursuant to the Stipulation, Kirkwood waived her right to collect fees from Culbreath.[20] In exchange for this immunity, Culbreath agreed to the entry of a judgment against it in the amount of $295,000 "in favor of … Kirkwood … payable to Buell & Elligett, P.A."[21] Based on the terms of the Stipulation, Kirkwood agreed that she would not "execute upon, record, or otherwise act upon" that $295,000 judgment. Culbreath assigned to Kirkwood and B & E "the proceeds from any and all actions, causes of action, or rights it has against any person or entity, including … Travelers."[22]

Therefore, by the terms of their Stipulation, Kirkwood gave up a definite executable judgment against Culbreath in exchange for a speculative claim against Travelers. Kirkwood relinquished the assured reimbursement of any fees she paid so that B & E could collect $295,000, fees that far exceeded what it billed. Along with the settlement, Culbreath, Kirkwood, and B & E executed a promissory note whereby Culbreath agreed to pay the latter two up to $50,000 (for "attorney's fees") plus interest depending on how much Kirkwood recovered from Travelers.[23]

On December 27, 2010, B & E delivered both the Stipulation and the proposed Consent Final Judgment to the state court judge and asked him to enter the judgment. In the Stipulation, Mr. Buell represented the following to the court:

> 11. **Representatives.** Each party to this Agreement represents and warrants to the other party hereto that such party has the full authority to bind it, and its successors and assigns, to the terms of this Agreement, and that the person signing it on each such party's behalf has been expressly authorized and instructed to do so by such party.

> Each party to this Agreement represents to the others that they are entering into this agreement freely and voluntarily being fully advised of the legal effect of this document by their respective attorneys.[24]

On December 29, 2010, the state court judge entered the Consent Final Judgment without holding a hearing.[25]

While Buell represented Kirkwood in the underlying action, he represents Sidman in the instant case. He testified at trial about the progression and resolution of the underlying action, as well as his purported motives for settling on Kirkwood's behalf. He justified his actions in settling the case by pointing to Kirkwood's desire to end the lawsuit and have her attorney's fees paid, that she knew what she wanted as an end result, and his alleged reservations about Culbreath's ability to satisfy a judgment rendered against it.[26] He also dismissed any suggestion that he should have discussed or explained the terms of the settlement to Kirkwood or a guardian before entering it.[27] What is

---

19. *See* Plaintiffs' Trial Exhibit 112.

20. *See id.*

21. *See id.*

22. *See id.*

23. *See* Plaintiffs' Trial Exhibit 114.

24. *See* Plaintiffs' Trial Exhibit 112.

25. *See* Plaintiffs' Trial Exhibit 116.

26. *See* Trial Transcript, Vol. 1, pp. 72:13–18; 84:9–25; 108:7–8; 103:13–104:1.

27. *See id.* at 23:12–14; Trial Transcript, Vol. 2, pp. 72:13–19.

troubling to the Court, however, is the fact that the Lewises' attorney, Scott Frick ("Frick"), even though he had the same marching orders from his clients as did Buell from Kirkwood—dismissal of the lawsuit and reimbursement of their attorney's fees—had them personally review, agree to, and execute the settlement agreement with Culbreath.[28] The Court is also troubled by the fact that based on Sidman's testimony Buell knew his client was in the hospital from a conversation Buell had with her husband (resulting in Buell sending Kirkwood flowers) but he took no affirmative steps to investigate and determine the nature and extent of the medical conditions which caused her hospitalization, even though he was negotiating the terms of a settlement agreement on behalf of Kirkwood with Culbreath.

Despite Buell's dismissive attitude regarding why he did not attempt to review the particulars of the settlement agreement with Culbreath with Kirkwood because he knew the result she wanted, the Court determines that there is a universe of difference between discussing with a client the results the client desires and the particular terms on which the client wants those results achieved. In this case, the credible and indisputable evidence clearly establishes that although Buell may have believed that what Kirkwood ultimately wanted was a dismissal of the lawsuit and the payment of her attorney's fees, he did not have her clear and unequivocal authority to enter into the specific terms of the settlement agreement with Culbreath, even assuming his belief was in good faith. See Ponce v. U–Haul Co. of Fla., 979 So.2d 380, 382 (Fla.Dist.Ct.App.2008). Indeed, based on the evidence and testimony before the Court, Buell would have been unable to secure Kirkwood's "clear and unequivocal consent" to the specific terms of the Culbreath settlement agreement in light of her mental incapacity during the relevant period when Buell and Francis Friscia ("Friscia"), Culbreath's counsel in the underlying action, were negotiating and then finalizing those terms.[29]

On March 3, 2011, Kirkwood, through Sidman, filed a Third Party Complaint against Travelers in the state court lawsuit, arguing that pursuant to the assignment she (as Kirkwood's personal representative) and B & E had received from Culbreath, she could sue Travelers under the policy it had issued to Culbreath. The Third Party Complaint against Travelers alleged that the Policy provided Culbreath

---

28. See Defendant's Trial Exhibit 31.

29. Although Sidman did her best to try and convince this Court that Kirkwood was not mentally incapacitated after suffering a stroke during surgery in November of 2010, it became evident to the Court, based on her demeanor and the manner in which she responded to questioning by the attorneys, that her testimony was obviously colored by her loyalty and devotion to her life-long friend and that her trial testimony given on August 13, 2015, was in direct conflict with the testimony she gave under oath in her deposition taken in June of 2013, when presumably her memory of events would have been better, in two critical respects. In her deposition, Sidman unequivocally testified that as of December 23, 2010, Kirkwood was unable to communicate with people. She also testified in her deposition that following Kirkwood's stroke, Kirkwood was unable even to respond to her. See Trial Transcript, Vol. 3, pp. 133:13–17; 135:21–25; 136:1–8; 137:24–25; 138:1–13. Moreover, her trial testimony regarding the mental competency of Kirkwood during the relevant time period is completely undermined by her signing "under penalties of perjury" on January 6, 2011, the petition she presented to the Probate Court of the Circuit Court of Hillsborough County seeking to become Kirkwood's plenary guardian and by testifying to this Court that she asked another attorney to draft the petition sometime in December. See Defendant's Trial Exhibit 32; Trial Transcript, Vol. 3, pp. 179, 1–25; 180, 1–18.

with coverage for the $295,000 in defense fees Culbreath "agreed" she had incurred and that she was awarded.[30] On March 11, 2011, Culbreath, which had entered into a $212,417 settlement agreement with the Lewises, filed its own Third Party Complaint against Travelers in which it alleged, as Sidman did in her Third Party Complaint, that the Policy indemnified Culbreath for its liability for fees awarded to the defendants who Culbreath unsuccessfully sued.[31]

Travelers moved to dismiss both Sidman's and Culbreath's third party actions, but the motions were denied. Travelers then petitioned the Second District Court of Appeal for a writ of certiorari. The appellate court instead issued writs of prohibition barring the lower court from adjudicating the case on the basis that the lower court lost jurisdiction when it entered the final judgments approving Culbreath's settlements with Kirkwood and the Lewises and awarded fees to those defendants. The appellate court held, however, that its decisions were without prejudice to Sidman and Culbreath filing independent indemnification actions against Travelers.[32]

After the appellate decisions issued, Culbreath and Sidman sued Travelers in state court, and Travelers removed the action to this Court on December 28, 2012. Travelers moved to dismiss Sidman's claim for failure to join a necessary party, B & E, which claimed an ownership interest in the claim against Travelers that Culbreath had

assigned, and that motion was denied. Two principals of B & E then formed the corporation known as Florida Policyholders, LLC (FP), presumably because they were faced with the prospect of having to join the action and thus subject B & E to the obligations of a party.[33] B & E transferred its purported interest in the claim against Travelers to FP. FP then became a Plaintiff in this case while B & E continued to represent Sidman.[34] The Second Amended Complaint in this action raises two counts of breach of contract against Travelers and alleges that the subject Policy insures Culbreath's liability for the defense fees incurred by Kirkwood and the Lewises resulting from Culbreath's unsuccessful affirmative actions against them.

### Discussion

Although the bench trial in this matter commenced regarding the issue of Kirkwood's consent to the Settlement Agreement raised in Travelers' motion for summary judgment, as well as the issue of whether the consent judgment entered pursuant to that agreement was void and thus not entitled to full faith and credit under 28 U.S.C. § 1738, the Court ultimately determined the settlement was a *Coblentz*[35] Agreement, and the case would be analyzed as such. As Travelers asserts, the question presented by this case is simple: whether pursuant to *Coblentz*, Plaintiffs can enforce the consent judgment entered in the underlying action against Travelers. The Court agrees with

---

**30.** See Dkt. 66, Exhibit 27.

**31.** See Dkt. 66, Exhibit 28.

**32.** See *Travelers Cas. and Sur. Co. v. Sidman,* 103 So.3d 900 (Fla.Dist.Ct.App.2012); *Travelers Cas. and Sur. Co. v. Culbreath Isles Prop. Owners Ass'n, Inc.,* 103 So.3d 896 (Fla.Dist. Ct.App.2012).

**33.** See Plaintiffs' Trial Exhibits 3, 131, 133.

**34.** See *id.*

**35.** *Coblentz v. Am. Sur. Co. of N.Y.,* 416 F.2d 1059 (5th Cir.1969) (holding that if a liability insurer is informed of an action against its insured, but declines to defend the insured, the insurer may be held to a consent judgment entered in the action absent fraud or collusion).

Travelers that because the settlement was negotiated in bad faith and awards an unreasonable amount of attorney's fees to the B & E law firm, the consent judgment cannot be enforced against Travelers.

■ As one court has correctly observed, "[i]n Florida, a party seeking to recover under a *Coblentz* agreement must prove: (1) coverage; (2) a wrongful refusal to defend; and (3) that the settlement was *objectively* reasonable and made in good faith." *Sinni v. Scottsdale Ins. Co.*, 676 F.Supp.2d 1319, 1324 (M.D.Fla.2009) (citations omitted) (emphasis added); *see also Mid–Continental Cas. Co. v. Am. Pride Bldg. Co., LLC*, 534 Fed.Appx. 926, 928 (11th Cir.2013) (determining, after canvassing Florida case law, that under Florida law a consent judgment will only be enforced against an insurer if the insured proves that the settlement amount was reasonable *and* made in good faith) (unpublished); *Stephens v. Mid–Continental Cas. Co.*, 749 F.3d 1318, 1322 (11th Cir. 2014) (citing *Am. Pride* for same proposition). Here, only coverage has been conclusively decided by the Eleventh Circuit's opinion on the appeal of the initial summary judgment ruling in this case. Thus, Plaintiffs must prove the two remaining elements in order to enforce the subject agreement. Plaintiffs cannot meet their burden.

■ The Court finds at the outset that Travelers' conduct does not bear on the reasonableness and good faith of *Coblentz*. While Travelers acknowledges that its coverage counsel was made aware of settlement talks between Culbreath and Kirkwood regarding attorney's fees, its position (and good faith belief at that time) was that any award of fees to the prevailing parties in the underlying action was

not covered. Therefore, there was no reason for Travelers to participate in the negotiation of the settlement, attend any hearing on attorney's fees, advise Culbreath on how to proceed, or to even request any information about the particulars of the agreement (*i.e.* how the $295,000 amount was calculated). Now that the Eleventh Circuit has determined that the subject policy does cover prevailing party attorney's fees, Travelers' inaction during the settlement negotiations can be characterized at most as a wrongful refusal to defend, the second element of a plaintiff's *prima facie* case to enforce a *Coblentz* agreement. Such inaction on the part of Travelers by no means establishes that the eventual settlement was made in good faith and was for an objectively reasonable amount as required by the third (and separate) element of a plaintiff's *prima facie* burden of proof. *Coblentz* and its progeny make clear that to be enforceable against an insurer, a consent judgment must be objectively reasonable. *Sinni*, 676 F.Supp.2d at 1324 (citations omitted).

■ Travelers explained in detail in Section III(B)(ii) of its Post–Trial Brief[36] how the amount of the settlement between Kirkwood and Culbreath, which compensates B & E at a rate of $842 per hour to defend a suit to enforce deed restrictions (which B & E itself described as frivolous), is not objectively reasonable. The reasons include the failure of the parties, contrary to Florida law, to hold an evidentiary hearing and obtain specific findings on the reasonableness of the fee award (which would have presumptively established the propriety of the amount awarded), Friscia's testimony that he (an attorney who had been practicing in this area of law for many years) had *never* seen an hourly rate that high awarded in such an action,[37] at-

---

**36.** *See* docket 172.

**37.** *See* Trial Transcript, Volume ("Vol.") 3, p. 41:10–43:13. This testimony renders his pur-

torney Michael Addison's ("Addison") expert report opining that $400 was the upper limit of acceptable hourly rates for B & E's services, Plaintiffs' misplaced reliance on *First Baptist Church of Cape Coral, Fla., Inc. v. Compass Constr., Inc.*, 115 So.3d 978 (Fla.2013) to argue that alternative fee arrangements where a party is awarded more if it collects from the losing party than if it paid its fees itself are authorized in Florida,[38] and the inherent lack of credibility of Friscia and Buell's testimony and affidavits (the only evidence Plaintiffs offered to support the reasonableness of the $295,000 fee).[39] Plaintiffs simply cannot meet their *prima facie* burden of showing that the $295,000 award is reasonable.

Some courts have evaluated reasonableness under *Coblentz* by examining what settlement a reasonable person in the position of the insured would have reached on the merits of the plaintiff's claims if the insured was required to pay the settlement itself. *See Bond Safeguard Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2014 WL 5325728, at *9 (M.D.Fla. Oct. 20, 2014), *aff'd on other grounds*, 2015 WL 5781002 (11th Cir. Oct. 5, 2015) ("Florida courts test the reasonableness of a *Coblentz* agreement by what a prudent person in the position of the [insured] would have settled for on the merits of

plaintiff's claim.") (internal quotation marks and citation omitted). This Court is able to determine whether an $842 per hour fee is reasonable without speculating as to what Culbreath's motives might have been and what a prudent insured in Culbreath's position would have done. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("The court, either trial or appellate, is itself an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.") (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir.1940)). The evidence adduced at trial indisputably demonstrates that Culbreath never would have agreed to award B & E $295,000 if the association had been required to pay that sum itself.

The Court must agree with Travelers that there is no better way to evaluate how a prudent insured in Culbreath's position *would have* acted than to examine how the association *actually acted* when it faced exposure for Kirkwood's fees. The fee agreement between Kirkwood and B & E called for an hourly rate of $300 with an inflated sum of $900 per hour if Kirkwood was awarded prevailing party fees. Prior to the settlement of the underlying action

---

ported "fear [that] court-awarded fees would be far greater" than the $842 per hour conferred by the settlement (Dkt.173, p. 6) completely unfounded and further undermines his credibility.

**38.** *First Baptist Church*, in sanctioning alternative fee arrangements, did not give a party *carte blanche* to collect its fees at whatever hourly rate it chooses; the party seeking to recover the fees still was required to justify its award to a trial court using the factors laid out in *Patient's Comp. Fund v. Rowe*, 472 So.2d 1145 (Fla.1985) and *Quanstrom v. Standard Guar. Ins. Co.*, 519 So.2d 1135 (1988) and was only entitled to recover a *reasonable*

amount in light of these factors. *See also TRG Columbus Dev. Venture, Ltd. v. Sifontes*, 163 So.3d 548, 552 (Fla.Dist.Ct.App.2015) (agreement called for $350 per hour or higher, and after a hearing at which it "undertook a complete consideration of *Quanstrom's* factors," the trial court found $400 per hour was reasonable and applied multiplier); *Wolfe v. Nazaire*, 758 So.2d 730 (Fla.Dist.Ct.App.2000) (agreement called for rate of $85 per hour or higher, court found $100 per hour was reasonable).

**39.** *See* docket 172, Section III(b)(ii).

(*i.e.*, when Culbreath was still faced with the prospect of paying Kirkwood's fees), Friscia (on behalf of Culbreath) commissioned and approved Addison's expert report, which opined that $300 to $400 per hour was the upper limit of the fees B & E was entitled to for representing Kirkwood in this matter and that the firm spent an excessive number of hours on the underlying action.[40] Friscia testified that he was convinced of the correctness of Addison's opinion and was prepared to present it to the state court.[41] It is, therefore, evident to this Court that Culbreath ceased acting as a reasonable and prudent insured as soon as it determined it could have a third party (Travelers) pay Kirkwood's fee award.

As Travelers points out, Culbreath's handling of the Lewises' negotiations also proves that its behavior in settling the Kirkwood matter deviated from reasonable and prudent once it determined it could avoid paying B & E's fees itself. Frick, counsel for the Lewises in the underlying action, testified that Culbreath essentially invited the Lewises to follow Kirkwood's lead by naming their own price in exchange for a covenant to seek collection from Travelers and not Culbreath.[42] As Travelers asserts, this was confirmed in an exchange of correspondence between Frick and Friscia. Frick inferred that Culbreath simply agreed to an unspecified multiplier on top of B & E's actual fees in exchange for a promise not to collect from the association,[43] to which Friscia responded "[c]learly, as you surmised in your correspondence, this explains why the amount of the judgment is what it is."[44] In light of the foregoing, it is highly unlikely that Culbreath would have been willing to allow either Travelers in the underlying action to, as Frick stated, "stipulate to whatever number you want,"[45] had the association been required to pay the resulting judgment itself. In fact, when the Lewises declined to accept an inflated number in exchange for a covenant not to execute, Culbreath proceeded to a contested evidentiary hearing that resulted in a judgment against the association.[46] Therefore, the settlement was not objectively reasonable.

█ Not only was the settlement not objectively reasonable, it was reached in bad faith on the part of both parties. B & E, through Buell, negotiated and executed a settlement agreement without the consent of its incapacitated client that awarded the firm $842 per hour while forfeiting Kirkwood's rights against Culbreath and delaying her recovery of the $20,400 she actually paid the firm. Instead of consulting with Kirkwood or waiting until a guardian was appointed, B & E unilaterally executed the settlement on her behalf. B & E's indefinite postponement of Kirkwood's recovery for its own benefit illustrates the conflict of interest the firm faced when resolving the underlying action—a conflict that taints the settlement. Buell, on behalf of B & E, then represented falsely to the state court that (1) he was "expressly authorized" by Kirkwood to sign the stipulation; (2) he was "expressly ... instructed" by Kirkwood to sign the stipulation; (3) Kirkwood was "freely and

---

40. *See* Defendant's Trial Exhibit 53.

41. *See* Trial Transcript, Vol. 3, pp. 31:14–33:6.

42. *See* Trial Transcript, Volume 2, pp. 102:24–103:12; 104:25–105:6.

43. *See* Defendant's Trial Exhibit 27.

44. *See* Defendant's Trial Exhibit 28.

45. *See* Trial Transcript, Vol. 2, pp. 102:24–103:2.

46. *See* Defendant's Trial Exhibit 30.

voluntarily" entering into the agreement; and (4) Kirkwood had been "fully advised of the legal effect" of the agreement.[47] Had the truth been disclosed to the state trial judge, as Buell was obligated to do under Rule 4–3.3(a)(1) of the Rules Regulating the Florida Bar,[48] the judge likely would not have entered a final judgment.

The Court finds that Travelers' presentation of evidence regarding Kirkwood's incapacity and the identification of Buell's misrepresentations to the state court are not designed to void or in any way invalidate the final judgment.[49] Rather, the Court must agree with Travelers that these factors illustrate a pattern of scheming and self-dealing without which the entry of a final judgment for the inflated sum of $295,000 (collectable only against Travelers) would not have been possible.[50] Enforcing a judgment procured under these circumstances against Travelers (a non-party to the underlying action) would clearly run contrary to the good faith requirement promulgated by *Coblentz* and its progeny.

To the extent Plaintiffs claim that only Culbreath's conduct in settling the underlying action is relevant when determining bad faith, it is clear that the association acted in bad faith when it offered to "lie down" and accept a judgment of $295,000 against it as long as recovery of that sum came from Travelers (and pursuant to the side deal, its own exposure was limited to $50,000 if the judgment could not be collected against Travelers).[51] Additionally, it is unquestioned that by agreeing to the inflated amount reflected in the settlement without serious negotiation, despite previously intending to vigorously contest both B & E's hourly rates and the time spent, by insisting on a covenant not to execute, and by assigning its rights under the policy to Kirkwood and B & E and later Florida Policyholders, Culbreath exposed Travelers to the duplicity of Kirkwood's lawyers. Without Culbreath's willingness to "lie down," Travelers would not have had to contend with B & E's bad faith in executing the settlement and procuring the final judgment in its favor.

The Court also rejects Plaintiffs "vouching in" argument as an effort to circumvent the good faith and reasonableness requirements of *Coblentz*. Plaintiffs argue that Travelers, "[h]aving been made aware of the progression of the negotiations, having been given the opportunity to appear and defend, having been provided with all of the material terms of the agreement, and having been given an opportunity to object, ... sat idly by, allowing the settlement to be consummated," is "vouched in," and may not now contest the enforcement

47. *See* Plaintiffs' Trial Exhibit 112, ¶ 11.

48. This rule, under the heading of "Candor Toward the Tribunal," provides in pertinent part that "[a] lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal ... " *See also Ramey v. Thomas,* 382 So.2d 78, 81 (Fla.Dist.Ct.App.1980) (stating that "[a]n attorney is first an officer of the court, bound to serve the ends of justice with openness, candor, and fairness to all.").

49. *See* docket 172, Section II.

50. Plaintiffs' argue that "[i]f the settlement was as outrageous, collusive and made in bad

faith as Travelers now asserts, Travelers surely would have objected." (Dkt.173, p. 17). However, at the time of the settlement, Travelers did not know that Kirkwood was incapacitated and did not learn this fact until discovery in this action or that Buell intended to represent otherwise in the stipulation and execute the agreement on her behalf. Additionally, Travelers had no reason to inquire about these issues in light of its coverage position.

51. *See* docket 172, Section III(B)(i)(d).

of the agreement.[52] The Court agrees with Travelers that if it were to accept this argument, the good faith and reasonableness requirements of *Coblentz* would be rendered superfluous. In fact, a case cited by Plaintiffs even discusses that for an indemnitor to be "vouched in," "[t]he judgment ... must be rendered without fraud or collusion ... Premised on the concepts of estoppel and *res judicata*, the judgment rendered in the main action establishes for purposes of the indemnity action all of the material facts litigated in the main action." *Camp, Dresser & McKee, Inc. v. Paul N. Howard Co.*, 853 So.2d 1072, 1079 (Fla. Dist.Ct.App.2003). The issues here—the reasonableness and good faith of the settlement—were plainly not litigated below. The state court, at the behest of the parties and in derogation of Florida law, never held the required hearing on these *Coblentz* elements, and the mere entry of a consent judgment does not constitute "litigation" of an issue. *See Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1079 (11th Cir.2013) ("Although a stipulated dismissal qualifies as a dismissal on the merits for *res judicata* purposes, Florida courts do not seem to recognize issued [sic] resolved with a judgment entered into by consent or stipulation as being actually or fully litigated for collateral estoppel purposes."); *JFK Med. Ctr., Inc. v. Price*, 647 So.2d 833, 834 n. 1 (Fla.1994) ("Moreover, a judgment by consent, though it terminates the claim to which it refers, is not an actual adjudication.").

◼ Finally, the Court rejects Plaintiffs' argument that Sidman's pursuit of this lawsuit somehow "ratified" the underlying settlement and thereby excused Buell's bad faith in negotiating the agreement, executing it on behalf of the incapacitated Kirkwood, and making misrepresentations to the state court. The record before the Court indisputably reflects that she was completely unaware of the material circumstances informing the execution of the settlement agreement or the relevant events leading up to and culminating in the filing of this lawsuit and that she relied on the judgment of the lawyers without asking for particulars.[53]

In conclusion, the Court recognizes that "*Coblentz* permits the insured to take reasonable measures to protect itself that would otherwise be prohibited by the policy as inimical to the carrier's interest." *Bond Safeguard Ins. Co.*, 2014 WL 5325728, at *9 (citation omitted). However, the Court is also aware that "[w]hat *Coblentz* does not do is authorize the insured to indiscriminately load the carrier's wagon with blocks of damage that no reasonable person would expect as consequences of the underlying claim." *Id.* The indisputable evidence convinces the Court that is precisely what occurred in this case: Buell, acting on behalf of B & E, and in collusion with Culbreath's attorney, Friscia, formulated an objectively unreasonable attorney's fees' settlement agreement designed to "load Travelers' wagon with blocks of damage that no reasonable person would expect as consequences of the underlying claim" for reasonable attorney's fees and later convinced the Florida state court, based on false representations, to enter a consent final judgment approving the agreement without convening a hearing to determine in fact whether the agreed upon attorney's fees were objectively reasonable in conformity with the dictates of *First Baptist Church* and its progeny.

---

**52.** *See* docket 173, page 19.

**53.** *See* Trial Transcript, Vol. 3, pp. 155:13–22; 158:12–25; 159:1–21.

ACCORDINGLY, it is **ORDERED AND ADJUDGED:**

The Clerk is directed to enter judgment in favor of Defendant Travelers' Casualty and Surety Company of America and against Plaintiffs Orline Sidman, as plenary guardian and on behalf of Phyllis Ann Kirkwood, and Florida Policyholders, LLC and to close this case.

**DONE AND ORDERED** at Tampa, Florida, on October 22, 2015.